702 F.2d 454
 32 Fair Empl.Prac.Cas. 1592,
31 Empl. Prac. Dec. P 33,439
Carl L. CUTHBERTSON, Brown T. Worthy, Fred Johnson, Jr.,
Calvin Gregory, Appellees,
and
James H. Little, John Clay, James W. Baldwin, Bobby
Campbell, Jimmie Anderson, Eddie Hicks, James
Gill, Truemain Mainor, Charles Neal,
Hendrick Robinson, Willie
Frazier, Jr., Plaintiffs,
v.
BIGGERS BROTHERS, INC., Appellant,
Calvin Gregory, Intervenor.
 No. 81-2044.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 20, 1982.
Decided March 9, 1983.
 
 J.W. Alexander, Jr., Charlotte, N.C. (Blakeney, Alexander & Machen, Charlotte, N.C., on brief), for appellant.
 J. Levonne Chambers, Charlotte, N.C. (Junathan Wallas, Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, Linwood O. Foust, Charlotte, N.C., on brief), for appellees.
 Before RUSSELL, WIDENER and HALL, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 Biggers Brothers, Inc. appeals from a judgment entered after a bench trial, in which it was found to have discriminated against four black employees in violation of 42 U.S.C. Secs. 1981, 2000e et seq., and which awarded relief. We reverse in part and remand in part for further proceedings.
 
 I.
 
 2
 The defendant, Biggers Brothers, Inc., operates a distribution center in Charlotte, North Carolina, where it receives and stores various food products for delivery to its customers. The defendant's principal business is selling foodstuffs to institutional buyers, such as restaurants, hotels, and hospitals for their in-house preparation.
 
 
 3
 The defendant's workforce comprises, from time to time as pertinent here, some 350-500 employees who were assigned to some thirty different jobs in separate departments, including the warehouse, transportation, maintenance, and sales departments. Given the nature of the defendant's enterprise, its sales department is the heart of the business. Salesmen work within various assigned territories in North Carolina and surrounding States. Salesmen are expected to enlist customers and solicit orders. They must become familiar with the defendant's extensive line of products, and they must help customers select products of the appropriate quality in light of the customer's desires and resources, and what the customer's competitors are offering. Salesmen also help customers calculate overhead and profit, and advise customers on economies in purchasing.
 
 
 4
 In the course of their duties, salesmen must place customers' orders with the defendant's order department, using a hand-held data-processing computer. They investigate their customers' credit-worthiness and recommend to the accounting department whether the customer should receive credit. Although the defendant's management decides finally whether to allow a customer to purchase on credit, a salesman's faulty recommendation may redound to both his and the company's detriment. The salesmen collect accounts. If the salesman cannot later collect from the customer, he is penalized for the delinquency. With at least a part of the cash and checks that he collects, the salesman must open and maintain bank accounts in the defendant's name. The salesmen must fully record and account for their collections, which in Cuthbertson's case exceeded a million dollars a year. In connection with their job-required responsibilities, salesmen must be proficient in and carry on correspondence with customers and the various departments of the defendant. The job, as described by the plaintiff Cuthbertson, is a profession or career, not merely soliciting orders. He freely admitted he was not qualified for the job without his college education.
 
 
 5
 The position of salesman for the defendant is quite desirable. Established salesmen are paid on a commission basis; there are in fact one or more salesmen who have cultivated many customers and who earn more than $70,000 a year. Only members of defendant's top management earn more than the top salesmen. Until November 1976, no black employee worked for the defendant as a salesman. The transportation department employees were predominately black. Other than sales, transportation is the highest paid department of the defendant.
 
 
 6
 On July 21, 1977, Cuthbertson, Worthy, and Johnson, along with eleven other plaintiffs, filed suit in the district court, alleging causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., and under 42 U.S.C. Sec. 1981. The plaintiffs alleged that the defendant, their employer, had discriminated against them and a class of black present and former employees. According to the complaint, the defendant had followed a pattern and practice of racial discrimination, had limited the opportunities of black employees to be promoted to sales positions, and had used subjective discriminatory criteria to prevent blacks from advancing into the higher paying hourly-paid and management positions. The defendant answered, denying all plaintiffs' material allegations.
 
 
 7
 The district court conditionally certified a class of all present and former black employees of the defendant, and a trial was had to the court. The plaintiffs' principal contentions were that they had sought sales positions and that the required qualifications were applied pretextually to exclude them. At the conclusion of the trial, the court filed a Memorandum of Decision, finding that the defendant had discriminated in its hiring of salesmen by denying or delaying the promotion of three of the plaintiffs and one other class member. The court in that document directed plaintiffs' counsel to prepare "appropriate findings of fact, conclusions of law and a judgment." It gave the defendant 30 days following service of plaintiffs' proposals to except or submit alternate proposals. The twenty-four pages of the findings of fact and conclusions of law prepared by plaintiffs' attorneys were adopted verbatim except for inconsequential changes in three pages which the court termed "relatively immaterial."[1] The district court then entered judgment, decertifying the class, enjoining the defendant from practicing racial discrimination against the four named employees, and awarding back pay in amounts to be determined in later proceedings before a master, as well as incidental relief. The court also awarded fees, costs, and expenses to plaintiffs' counsel. The balance of the plaintiffs' claims were dismissed. Defendant's principal claim on appeal is that the finding of racial discrimination by exclusion of the four black employees from sales positions was clearly erroneous.
 
 II.
 
 8
 In establishing a prima facie case of racially discriminatory treatment in violation of Title VII, a plaintiff must show by a preponderance of the evidence that he applied for an open position for which he was qualified, but was rejected under circumstances that give rise to an inference of unlawful discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1980); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Once a plaintiff makes out his prima facie case, the burden of production, not the burden of persuasion, shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824. If the employer satisfied its burden of production, the plaintiff must have the opportunity to show that the proffered reason is merely a pretext to mask intentional discrimination. A plaintiff retains the burden of persuasion to show that the employer was more likely motivated by an illicit discriminatory reason than the one proffered or that the proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095; McDonnell Douglas Corp., 411 U.S. at 804-05, 93 S.Ct. at 1825-26.
 
 
 9
 At trial, the plaintiffs contended that they were qualified for sales positions by their training and work as truck drivers and in the warehouse. The defendant challenged this contention. It claimed that at least since 1967, informally, and since 1976, formally, it had required for salesmen two years of sales experience, or two years of managing a food related business, or two years of college. In addition, the defendant sought persons who were neat in appearance, personable, and articulate, although these attributes are not at issue in the case. The defendant did not conduct a study to see whether these criteria were necessary for a prospective salesman's future success; nevertheless, because of the specialized selling involved, the defendant believed that these criteria would help it select successful salesmen who had the requisite math and verbal skills and who would responsibly carry out their selling duties.
 
 
 10
 The plaintiffs attacked defendant's insistence on these qualifications as a pretext. They claimed that many of defendant's salesmen did not meet the qualifications for the job. The district court agreed. It found that white employees and applicants had been selected as salesmen with no prior sales experience or education beyond high school. It further found that the most useful sales experience was working in the warehouse and order departments, and driving trucks, in which jobs it said an employee could learn the defendant's product line and the means of processing orders, and become familiar with the defendant's customers. Accordingly, the court concluded that four of the claimants established prima facie cases of unlawful discrimination. Having found that the defendant's standards were not followed for hiring white salesmen, the district court concluded that the defendant offered no acceptable explanation for its failure to employ the plaintiffs in sales, and gave judgment for three plaintiffs and one purported class member.
 
 III.
 
 11
 We have previously condemned the practice of adopting the prevailing party's proposed findings of facts and conclusions of law, and we repeat that admonition here. EEOC v. Federal Reserve Bank of Richmond, 98 F.2d 633 (4th Cir.1983); Holsey v. Armour & Co., 683 F.2d 864 (4th Cir.1983); White v. Carolina Paperboard Corp., 564 F.2d 1073, 1082-83 (4th Cir.1977); Chicopee Mfg. Corp. v. Kendall Co., 288 F.2d 719 (4th Cir.1961); THE SEVERANCE, 152 F.2d 916 (4th Cir.1945). Federal Rule of Civil Procedure 52(a) requires the court in non-jury cases to find the facts specially and to state separately its conclusions of law. The adversarial zeal of counsel for the prevailing party too often infects what should be disinterested findings to entrust their preparation to the successful attorney. Although findings of fact should not be set aside unless clearly erroneous, where, as here, plaintiffs' counsel has prepared the findings and the district court has adopted them verbatim, we accord the findings less "weight and dignity [than] ... the unfettered and independent judgment of the trial judge." THE SEVERANCE, 152 F.2d 916, 918 (4th Cir.), cert. denied 328 U.S. 853, 66 S.Ct. 1344, 90 L.Ed. 1626 (1945). In the case at hand, we hold, as explained later, the use of the practice is a reason to remand.
 
 IV.
 
 12
 In finding that the prevailing plaintiffs were qualified to be salesmen by their truck driving and warehousing experience, a key finding, the district court relied upon a supposed admission by the defendant's vice president for sales, Charles Black. The court found that Black admitted at trial that defendant's truck drivers gain the same or more significant knowledge with respect to defendant's products from their work than defendant's salesmen have. From the admission it had found, the court further found that truck driving was among the most useful qualifying experiences for preparing someone for a sales position and that truck drivers for the defendant are qualified to become sales trainees.
 
 
 13
 Inspection of the record of Black's testimony, however, fails to reveal such admission. On direct examination, plaintiffs' counsel asked Black whether truck drivers become familiar with the defendant's products. Black answered that the drivers should become familiar with the products, and, in response to a further leading question, responded that they may well know as much as the salesmen do. Plaintiffs' counsel then questioned, "Why isn't the experience of the driver not sufficient?" To which Black, just as vaguely, answered, "I didn't say it wasn't."
 
 
 14
 That this answer was not an admission is shown by Black's testimony on cross examination immediately following:
 
 
 15
 Alexander (defendant's counsel): Now you have testified that truck drivers require [sic] a knowledge of your product. Is that right?
 
 
 16
 Black: They require [sic] a knowledge of knowing the label on the product as far as delivery, not the actual product.
 
 
 17
 Alexander: Is there a difference between the knowledge of the product that the driver requires [sic] and knowledge of the product that the salesman has to have?
 
 
 18
 Black: Oh, yes, definitely so. The salesman has to know the cost per serving, the number of ounces in a can, how many servings you can get out of a can. He has to know the different grades of items that a country club uses versus what a hot dog stand would use. You definitely wouldn't use the same type product. We have everything from extra-fancy merchandise down to standard merchandise, and you have to know the customer as well as the competition in the area of items you're going to use to compete to get the business.
 
 
 19
 Black's uncontradicted and unimpeached explanation leaves no substantial support for the district court's findings on the preparatory value of truck driving. See Evis Manufacturing Co. v. F.T.C., 287 F.2d 831, 842, cert. denied, 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 28 (1961). Cf. 7 J. Wigmore, Evidence in Trials at Common Law Sec. 2094 (Chadbourn rev. ed. 1978) (completeness doctrine). Even more importantly, the testimony of plaintiff Cuthbertson, who had by then worked as a salesman for almost three years, corroborated Black's testimony, and not the plaintiffs' theory, as to what relevant experience truck driving may provide for later sales work. He testified that he was not qualified to work as a salesman either by his truck driving and warehouse experience or by his high school education. Cuthbertson also testified on the complicated nature of his sales duties, lending support to the defendant's contention that post-secondary education or sales or food management experience was desirable preparation for a career in sales.
 
 
 20
 At trial, the defendant satisfied its burden of production by articulating a legitimate, non-discriminatory reason for rejecting the plaintiffs; that none of the plaintiffs satisfied its qualifications for a sales position.[2] The plaintiffs attempted to rebut this defense by showing that the defendant's application of its qualifications was pretextual and that their own qualifications were sufficient. The district court found, relying on plaintiffs' trial exhibit 22, that "the education and prior experience of salesmen demonstrate that neither college training nor prior sales experience has been a determining factor in their selection." That plaintiffs' exhibit compiles the names of 97 people who worked as salesmen between 1972 and February 1978. Of that number, the plaintiffs in their brief do not contend that 76 did not meet the defendant's standards. The remaining 21, and this is one of the two crucial points in their case, plaintiffs claim did not possess the qualifications sought by the defendant. After reviewing the evidence, however, we conclude that plaintiffs have not proved that the stated criteria were not applied.
 
 
 21
 Of the 21 salesmen who it is argued did not meet the defendant's criteria, plaintiffs' evidence shows two had two or more years of college education (Arbo, Miller), and seven had two or more years of prior sales experience (Gardner, P., Bunn, Hartley, Heath, Conder, Cappozziello, Bostic). Three salesmen had prior experience in food management (Shaw, Johnson, Whitaker). Thus, these twelve salesmen all met the stated qualifications.
 
 
 22
 For four salesmen, plaintiffs' evidence allows no inference from their prior experience because it fails to reveal previous job positions they had held (Amos, Blackburn, J.W., Hall and Green). The burden is on the plaintiffs to establish pretext, Burdine p. 256, 101 S.Ct. p. 1095, and the plaintiffs did not show the prior job experience as just mentioned above. Even for these four, we note in passing unexplained and apparently credible evidence which the plaintiffs did not develop that Amos had previously been employed for 24 years by R.P. Turner Company and Smith Drake Wholesale Company (other testimony in the record indicates these are food companies); Blackburn had been vice president and general manager of his own company and had been employed four years by Surry Hardware Company; and Green had been employed for two years by Kent-Coffey. Additionally, Hall was employed as a salesman in 1959, before the effective date of the 1964 Civil Rights Act.
 
 
 23
 Two of the 21 claimed not to have the specified qualifications when they were hired by the defendant in sales were Hilton and Gardner, W. But they entered sales only after two or more years in the defendant's order department, which is a part of sales, and Gardner was made a salesman in 1963, before the effective date of the 1964 Civil Rights Act, as was Hilton, both of them being placed in sales before 1967.
 
 
 24
 One other man (Harris) was hired in 1975, apparently in sales, although the plaintiffs' exhibit lists his employment as "sales-order department." His previous employment was not in the food business nor as a salesman according to plaintiffs' exhibit. Nevertheless, a defendant's exhibit which was credited by the court showed that Harris had three years of college and was a part-time salesman while in college.
 
 
 25
 The remaining two of the 21 salesmen are Caudle and Crowell. Crowell was placed in sales in 1958, well before the date of the 1964 Civil Rights Act, and Caudle was made a salesman in 1973, having previously worked in the defendant's warehouse order department and as an inside salesman from 1966 until 1973.
 
 
 26
 Thus, we see that the evidence with respect to the 21 people upon whom the plaintiffs depend for their case does not support any inference of pretext. Rather, it shows that since 1967, and perhaps even before that, when the defendant commenced insisting on its qualifications for salesmen, that those hired or transferred into sales have met the qualifications. We should note here that the plaintiffs make no issue of one Bruce Fant, hired in 1975, made a sales trainee in 1977, and terminated three months later. Apparently they accept the defendant's explanation that he was the most qualified of a number of applicants, although he did not meet the company's stated standards.
 
 
 27
 To underscore its finding that the defendant did not consistently apply its standards for beginning salesmen, the district court found that the company officers and supervisors in charge of sales were not qualified according to the stated standards (Black, Plyler, Richardson, Oren Biggers, Bill Gardner, and Rhudy Johnson). This finding also is contrary to the record. Black was employed by the company in 1952 and went into sales in 1958 in the order department, where he stayed for two years, becoming a sales representative in 1960, all well before the passage of the 1964 Civil Rights Act. He became sales manager in 1967 and vice president in charge of sales in 1975. Plyler had more than three years of college, majoring in business, and was a salesman for Carolina Produce for three years; he was employed in 1949 as a salesman. Richardson was a salesman for more than three years for Frozen Foods, Inc. Oren Biggers had at least two years of college. Bill Gardner was employed in 1957 and worked in the order department for six years before going into sales in 1963, all well before the passage of the Civil Rights Act of 1964. Rhudy Johnson was the owner of his own food business, Rhudy's Food Mart, for three years prior to being employed in 1973.
 
 
 28
 Based upon the plaintiffs' evidence, the key parts of which we have just analyzed, the district court found that the defendant inconsistently applied its job criteria. The court's error rests on a fundamental mistake. Noting that the defendant did not question that most of its salesmen had no more than a high school education and that most had no sales experience, the district court disregarded the defendant's stated rule that these criteria were applied disjunctively, and applied them conjunctively in reaching its decision.
 
 
 29
 After reviewing plaintiffs' exhibit 22, we find that nearly all of the employees hired or promoted into sales satisfied the requirement of either two years of post-secondary education, two years of sales, or two years of management experience relating to food.
 
 
 30
 Having reviewed the findings concerning the pretextual application of the defendant's standards and the findings that the plaintiffs' on-the-job training was an acceptable substitute for the defendant's experience requirements, we have "the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1947). We conclude that these findings of the district court are clearly erroneous. FRCP 52(a).[3]
 
 
 31
 We turn now to the individual cases of the plaintiffs who received back-pay awards.
 
 A. Carl Cuthbertson
 
 32
 Carl Cuthbertson started working for the defendant as a warehouse worker in the fall of 1970. He was then 17 years old and had recently been graduated from high school. In 1971 Cuthbertson enrolled in a local community college. In 1972 he asked for, and he received, a promotion to position of truck driver. He attended the community college the summer and fall terms of 1971 and the winter term of 1972. He did not attend again for two years, until the spring term of 1974. He attended that term and the summer and fall terms of 1974. He next attended the spring and summer terms of 1975, and did not attend again until the summer term of 1976, which he completed in September of that year. His college training was interrupted, then, in 1972-74 for two years; in the winter of 1975 for three months; and in 1975-76 for nine months.
 
 
 33
 The district court's findings on which it based Cuthbertson's eligibility for promotion are his two years' work in the warehouse and his subsequent experience as a truck driver beginning in 1972.
 
 
 34
 The district court's conclusion that Cuthbertson's experience in the warehouse and as a truck driver qualified him for promotion to a salesman is erroneous for two reasons. First, he had no experience in sales or food management. Second, and just as important, Cuthbertson admitted in his testimony that he was not qualified for the job by his warehouse and truck driving experience.
 
 
 35
 The district court found, and it seems to be agreed, that Cuthbertson had completed the equivalent of 1 1/2 years of college study beyond high school, in September 1976, just before he was promoted to sales in November of that year. Cuthbertson had also enrolled in courses during the period 1971 -1976, which, had he completed them, would have made enough hours to complete two years of college work. He withdrew from a part of such courses and took an incomplete grade in the others.
 
 
 36
 The district court made no specific finding as to when Cuthbertson completed his college training, although it may be inferred from its opinion that it found that training was completed in September 1976 ("Cuthbertson also completed 1 1/2 years of study beyond high school before his promotion to sales.").
 
 
 37
 We think that such an inference is the most logical one from the record. The testimony, other than the college transcript, with reference to Cuthbertson's college training, including the completion date of that training, is confused. A vice president of the college, however, testified without refutation that Cuthbertson's college transcript, which is a part of the record, reflected the records of the college, and that must be accepted as the fact. Cuthbertson, then, completed his college training in September 1976 and was promoted to sales in November of that year. No issue is made of the two months' period between September and November; neither was there any other promotion to, or hire into, sales during that period which has been brought to our attention. Whether the defendant accepted Cuthbertson's enrollment in certain courses as the equivalent of the 1/2 year of college training he did not receive credit for is not shown by the record. Indeed, that subject was not explored. If the defendant in fact accepted whatever college training Cuthbertson had as the equivalent of two years, in September 1976 he met the standards the company had set for its salesmen. Even if the company promoted Cuthbertson before he met the company's standards, it preferred a black employee rather than a white one, so there would be no violation of the Civil Rights Acts in the context presented here on that account.
 
 
 38
 Cuthbertson, in his testimony, claimed that he told members of the defendant's management in 1974 and 1975 that he had finished his education. We assume that he meant that he had completed as much of his education as he was going to. While his statement is entirely inconsistent with and is belied by his re-entry into the community college in 1975 and again in 1976, assuming that he did make the statement as claimed, he had not completed two years of college work on either of those occasions, and thus did not meet defendant's standards for the job.
 
 
 39
 Cuthbertson's case fails because he was not qualified for the position he sought, McDonnell Douglas, 411 U.S. p. 802, 93 S.Ct. at p. 1824, at any time earlier than 1976, when he was promoted, even if he met the company's standards at that time. His judgment is reversed.
 
 B. Calvin Gregory
 
 40
 Calvin Gregory began working for the defendant in 1973 as a truck driver. Gregory had finished high school and about six months of college when he started driving. He also had some previous experience as a clerical worker in the Army.
 
 
 41
 Gregory testified that he had asked defendant's personnel manager about being promoted to sales before 1977 but had been told that he was unqualified. In 1977, Gregory signed an interview list for a posted vacancy to be considered as a sales trainee. After learning that the position required accepting a reduction in pay and relocating, Gregory withdrew his name from consideration because he did not desire to move or to quit his schooling. The district court found that Gregory would not have withdrawn if he had known what salary he would have earned after finishing the training program, despite the fact that Gregory testified that he was so advised: "He pretty well gave me a summary of it" ["how much a salesperson was making"]. On May 31, 1977, Gregory filed a charge of discrimination with the EEOC. He was fired for not showing up for work in 1980, which is not an issue in the case.
 
 
 42
 Gregory was not a named plaintiff but was a member of the putative class which was decertified in the judgment of the district court. The defendant defended against Gregory's claim on the ground that he did not possess the qualifications required for a sales job. The district court entered findings and conclusions concerning Gregory and awarded him back pay.
 
 
 43
 At trial, the parties disputed whether Gregory was truly interested in a sales job when he signed up for an interview in March 1977. Assuming that Gregory was interested, and even assuming, contrary to the record, that he was not advised of the pay, he failed to show that he met the qualifications the defendant set for the job. Gregory had no experience in sales or food management, and he had only six months of post-secondary education. Accordingly, we conclude that Gregory failed to establish a prima facie case, and the district court's judgment awarding him back pay must be reversed.
 
 C. Fred Johnson
 
 44
 Fred Johnson started working for the defendant as a truck driver in July 1969, and continued in that job until 1977, when he was fired at Worthy's instance either for discourtesy to customers or insubordination for failure to make a delivery. Before working for the defendant, Johnson had completed his high school education and had experience as a taxicab driver and as a mechanic and truck driver. Johnson had no experience in sales or food management, and only some additional college study, probably less than a year.
 
 
 45
 Johnson testified that he applied for a sales job for the first time in 1974, and that he asked for consideration again in January 1976. He filed charges of discrimination with the EEOC on February 6, 1976.
 
 
 46
 The court below concluded that the defendant's failure to promote Johnson to a sales position resulted solely because of Johnson's race. The court characterized the defendant's insistence that this plaintiff lacked the qualifications for a sales job as "simply a ruse." Johnson, however, who had no sales or management experience and only some additional college education, did not show that he was qualified for the job he sought. Thus, the district court's award of back pay to him must be reversed.
 
 D. Brown Worthy
 
 47
 Brown Worthy began working for the defendant in 1963 as a warehouse laborer. Within a year, he started to drive the defendant's trucks, and by 1968 he was promoted to relief driver. In 1970, he was made a route supervisor.
 
 
 48
 In 1968, Worthy, on behalf of himself and other black truck drivers, met with the defendant's management to discuss what they claimed were the company's discriminatory practices and their desire to improve the opportunities of blacks to become salesmen.
 
 
 49
 The district court found that the defendant offered Worthy a job in sales in 1970, some two years after the 1968 meeting. This finding is not clearly erroneous. Worthy testified that after discussing the change in jobs with his family and the possible need to relocate, he decided, a week or so later, that he would accept the position, and notified the defendant to that effect. He further said he was told, however, that his promotion would have to await the training of his replacement. He continued, that, after the replacement was trained, the date of the completion of such training being not mentioned in his testimony, he notified his immediate supervisor of that fact but never heard anything further from the company. Other than the evidence we have just related, there is nothing in the record to support the finding by the district court that Worthy "continued his efforts [commencing in 1970] to promote to sales until after his EEOC charge on February 6, 1976." Indeed, Worthy testified that one Biggers offered him a job in sales in 1975 or 1976, probably in 1975, but that he turned down the offer. A third offer of a job in sales was made to Worthy in 1976, after he had filed his EEOC charge in February, but he rejected that offer also. And he did not sign up for a 1977 posting of an opening in the sales department. The 1975 job offer to Worthy, which he recounted in his testimony, is not discussed by the district court in its opinion.
 
 
 50
 The district court found that Worthy was qualified for the sales position by his education and training. The finding that he was qualified by his training is clearly erroneous, as we have before set out, because he had neither had sales experience nor been engaged in the management of a food business. While there is some doubt as to what date Worthy completed his two years of college training, for the purpose of this opinion, since the defendant offered him a sales job in 1970, we will assume that he had completed his two years of college at that time.
 
 
 51
 Worthy has not established that he was more qualified than anyone who was given a sales job between 1970 and 1976. The fact that he may have been equally qualified is not enough to establish a prima facie case, for "... the employer has discretion to choose among equally qualified candidates, providing the decision is not based on unlawful criteria." Burdine 450 U.S. at p. 259, 101 S.Ct. at p. 1097; EEOC v. Federal Reserve Bank of Richmond, 698 F.2d 633 (4th Cir.1983).
 
 
 52
 Thus, absent other evidence, Worthy has not established a prima facie case under Burdine and McDonnell Douglas, for he did not establish that anyone of lesser qualifications was given a job as a salesman during the period in question.
 
 
 53
 But the fact remains that Worthy was offered a sales job in 1970 and again in 1976, and may well have been offered the job on another occasion in 1975. The Burdine and McDonnell Douglas rules for establishing and countering prima facie cases completely aside, we think that Worthy should be allowed to try to prove that, for any vacancy which may have occurred within the pertinent period, he was not given the job, but his promotion was delayed, for discriminatory rather than neutral reasons. The record simply contains no explanation of why the defendant did not give Worthy the job in sales, when it was offered to him in 1970, or thereafter, providing he had a continuing interest. While the record does not support the finding of Worthy's continuing interest in the sales job between 1970 and 1976, there is his testimony which would tend to show an interest which continued at least until he spoke to his immediate supervisor, some time after the training of his replacement had been completed. The number of communications on that subject by Worthy to the defendant, if more than one, is not shown by the record. Neither is the date of any such communication. All of these matters, of course, are relevant because of applicable statutes of limitation under Title VII and Sec. 1981, as well as going to the reason for not promoting Worthy. Worthy's turndown of the offer of a sales job, apparently in 1975, likewise deserves to be taken into account.
 
 
 54
 We think the record is too incomplete for us to make with confidence findings with respect to discrimination or to the statutes of limitations and are more appropriately the province of the district court in the first instance. Even more importantly, the findings of fact and conclusions of law were not prepared by the district court, rather by Worthy's attorney. In view of the unclear record on this point and the method of arriving at the findings and conclusions of the district court, the judgment in favor of Worthy must be vacated and remanded for further consideration by the district court. On remand, all facts relating to any delay in offering the job to Worthy should be developed, and either party may introduce evidence relevant to that question. At the conclusion of the remand proceedings, the district court will prepare its own findings of fact and conclusions of law. While, in Chicopee, we have recited that there is authority for the submission to the court of proposed findings of fact and conclusions of law by the attorneys for the opposing parties in the case and the adoption of such of the proposed findings and conclusions as the judge may find to be proper, that same case further stated that "there is no authority in the federal courts that countenances the preparation of the opinion by the attorney for either side," and that "That practice involves the failure of the trial judge to perform his judicial function," justifying a reversal and a remand for further proceedings. Chicopee, pp. 724-725. The district court in the case at hand did not merely adopt such of the proposed findings and conclusions as it found to be proper; it adopted 24 pages of them verbatim, with only a few inconsequential changes.[4] We express again our strong disapproval of this practice. Even if the vacation of the district court's order is not required by the practice, it is permitted because of it, and we are of opinion it is an additional reason to remand the judgment in favor of Worthy.
 
 V.
 
 55
 With the possible exception of Worthy, all of the grounds on which an injunction could have been based have failed, so it follows that the injunction must be dissolved, and that part of the order awarding an injunction is reversed. Even if Worthy succeeds on remand to the extent that he is awarded back pay for some period ending in 1975 or 1976, he declined an offer of employment as a salesman in 1976, as well as probably in 1975, and did not sign a posting for a salesman's vacancy in 1977. Within his own department, Worthy has been quite successful and has not been discriminated against. He is a supervisor. There is no indication that any racial discrimination which may have existed in the company's failure to promote him to a salesman's job some time between 1970 and 1976 would be repeated. If anything, the contrary appears.
 
 VI.
 
 56
 We do not decide any question of attorneys' fees and related expenses at this time, and the district court should reconsider that matter on remand. For that court's guidance on remand, however, we do note that the attorneys' fees presently awarded are necessarily too large. Three of the four plaintiffs' cases have been reversed, and the fourth has been remanded. The injunction has been dissolved. The class action was terminated favorably to the defendant in the district court, and most of the plaintiffs' cases were there terminated favorably to the defendant. Worthy's case does not depend upon, and never did depend upon, vast amounts of research throughout the company files, much of which was pointed at tending to prove other cases than Worthy's. Neither does it depend upon the testimony of the expert witness. Should Worthy succeed on remand, the attorneys' fees awarded should be for the time and effort devoted to his claim. We realize, of course, that there will be some unavoidable overlap. For example, plaintiffs' exhibit 22 was relevant evidence in Worthy's case as well as others, but this is not to say that attorneys' fees should be awarded for the effort expended on behalf of all of the plaintiffs' claims which have failed for one reason or another during the course of the proceeding.
 
 
 57
 The judgment of the district court is accordingly
 
 
 58
 REVERSED IN PART, and VACATED and REMANDED IN PART.
 
 
 
 [1]
 The plaintiffs also alleged that the defendant treated black supervisors differently from the way it treated white supervisors in other departments. Although the district court made a conclusory finding that the defendant discriminated in this way, it also found that the defendant voluntarily changed the complained of practices before trial, was not likely to resume them, and granted no relief. Especially in view of our vacation of the district court's order, we consider the finding mere dictum and unappealable. The plaintiffs, we note, agree that no appeal could be taken from the finding
 
 
 [2]
 We assume, however, as later explained, that the plaintiff Worthy was qualified
 
 
 [3]
 Appellees conceded, as they were obliged to, at oral argument that this case basically involves alleged disparate treatment of the black plaintiffs. However, they also contend that the qualifications that the defendant specified for its salesmen had a disparate impact on blacks
 Neither in their complaint nor in their pretrial statement of contentions and issues, did the plaintiffs put forward a theory that the defendant's requirements had a disparate impact on blacks so that it might constitute illegal conduct by the defendant. The district court's opinion was obviously based on disparate treatment by the application of the defendant's stated qualifications. For example, in n. 5 of its opinion, the district court stated: "The Court, therefore, refuses to accept defendant's assertions that the criteria indicated have been consistently applied."
 Nevertheless, the district court's findings note that the defendant failed to prove the legitimacy of seeking salesmen with educational training beyond high school and remarkably enough the defendant was similarly condemned even for using prior sales experience as one criteria. Such language implies that the defendant had an affirmative burden of proof to show the job relatedness of its qualifications. The Supreme Court has held, however, that defendants in disparate treatment cases do not carry the burden of proof to show why a plaintiff was rejected from a position. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1980). The burden of proving intentional discrimination always remains on the plaintiff in a disparate treatment case, although, after a plaintiff establishes a prima facie case, the defendant does have a burden of production "to articulate some legitimate, non-discriminatory reason for the employee's rejection." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).
 In a disparate impact case, on the other hand, to show that a certain standard has a disparate impact on a protected racial group, a plaintiff must first establish that the employer's policies, neutral on their face, had a disproportionate impact on the protected group by disqualifying them at a significantly higher rate than whites. See Dothard v. Rawlinson, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786 (1977). If a prima facie case is established, then a defendant has the burden of proof to establish job relatedness. New York City Transit Authority v. Beazer, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); Dothard at p. 329, 97 S.Ct. at p. 2726.
 Because of the findings of the district court which may seem to go to job relatedness, which we note parenthetically are supported by no substantial evidence called to our attention, we have sought to determine whether the plaintiffs established in the record a prima facie case because of disparate impact of the stated qualifications. At trial the plaintiffs adduced testimony from their statistical expert who analyzed the availability and use of blacks in the defendant's sales positions between 1972 and 1978. His opinion evidence was calculated to show the under utilization of blacks as salesmen for the years 1972-1978 by a statistical analysis. He did not testify there was any disparate impact of Biggers' standards on blacks. Thus, there was no showing of disparate impact on blacks by defendant's use of its job qualifications, and the plaintiffs did not establish a prima facie case of such disparate impact which might have served to shift the burden of proving job relatedness to the defendant. We conclude, therefore, that the district court's language is not the basis for an alternative holding in this case.
 We also note that the district court accepted in passing plaintiffs' statistical evidence, but it did not discuss defendant's contrary testimony, and did not base its decision on the evidence of plaintiffs' statistician. Accordingly, we have no occasion to pass on the weight, if any, which should have been given to his testimony.
 
 
 [4]
 On p. 1 it deleted "PLAINTIFFS' PROPOSED" before "FINDINGS OF FACT AND CONCLUSIONS OF LAW"; on p. 6, line 5, it changed "determinant" to "determining," and changed "and" to "to" in footnote 6, line 1; and on p. 8 it changed "to" to "and" in para. 14, line 6, and added a "d" to "Discourage" in para. 16, l. 1