Charlene MONROE, Appellee,

v.

BURLINGTON INDUSTRIES,
INC., Appellant.

No. 84–2362.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1985.

Decided Feb. 28, 1986.

Thornton H. Brooks (William P.H. Cary, Brooks, Pierce, McLendon, Humphrey & Leonard on brief), for appellant.

Randall G. Johnson (Hill, Tucker & Marsh on brief), for appellee.

Before PHILLIPS, MURNAGHAN and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

Burlington Industries appeals from the district court's judgment in favor of Charlene Monroe. After a bench trial, the district court found that Burlington failed to promote Monroe because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The court found that Monroe, a black woman, established a *prima facie* case of race discrimination and that Burlington's proffered nondiscriminatory reasons for failing to promote Monroe were pretextual. We conclude that the district court's determinations were not clearly erroneous, and we affirm.

Burlington hired Monroe on July 19, 1971 as a keypunch operator, a position which she occupied at all times relevant to this case. In early 1983, she sought promotion to the positions of Clerk III and Control Clerk III at Burlington's Altavista, Virginia facility, where she was employed. She failed to get either promotion. Burlington selected two white employees for the vacancies: Sharon Brown as Clerk III and Donna Worley as Control Clerk III.

In September 1982, Burlington instituted a promotion policy known as the "Job Opportunity System." This system requires employees to specify an interest in a particular generic job classification, e.g., Control Clerk III, prior to the existence of a vacancy in that classification. When a vacancy occurs, decisions regarding promotion are based on seniority. Burlington considers first the individual with the most seniority among those who have applied. If it finds that person not promotable, it considers the next person in seniority. In deciding whether an applicant is promotable, the company uses the ratings of employees contained in its personnel files.

Burlington evaluates employees on eighteen specific characteristics within the following five general areas: quantity of work; quality of work; relationship with others; initiative and self-reliance; and dependability. It rates performance in those areas from a low of "1" to a high of "5," with "3" representing "good solid performance," according to Burlington. Monroe generally maintained a "3" evaluation throughout her career. The performance review also rates employees on the same "1" to "5" scale for "potentiality assessment" or promotability. Monroe's last three appraisals in the promotability category prior to her promotion applications were "2". Her performance review for 1982 indicated that her supervisor considered her most notable weaknesses to be "poor attendance" and only "average knowledge of job procedures." Her personnel folder also included a written reprimand for two days of unexcused absence in 1981, a record of a counseling session earlier that year for tardiness and reprimands for tardiness in prior years. Prior to 1980, Burlington did not use a numerical potentiality rating, and Monroe had simply been rated as "not promotable." It was uncontradicted that Burlington's personnel man-

ager at the Altavista facility, James Avant, was not personally acquainted with Monroe nor had any knowledge from personal observation of her work habits or abilities. His decisions denying her the promotions were based solely on information contained in her personnel records.

The evidence at trial was that Avant briefly discussed the Clerk III vacancy in the Customer Service Department with Linda Ross, the Department's manager, who indicated that attendance was an important factor in the position. Avant then reviewed the applicants' personnel files. He considered Monroe, but found her unqualified for promotion because of the low potentiality rating of "2" and the notations in her personnel file indicating past attendance problems. Avant then offered the job to the next employee on the list, a white woman, because he considered her qualified on the basis of her record despite the recommendation of the employee's supervisor that she was not qualified for the position. This employee, however, declined the position. Avant next considered a white applicant who was also denied the promotion based on a potentiality rating of "2." He then considered Brown, a white, for the position and granted her the promotion.

Avant followed the same procedures in filling the Control Clerk III position, and he denied Monroe the promotion for the same reasons he denied her the Clerk III position. He next considered a white female and refused her the promotion due to disciplinary problems relating to the current quality of her work, i.e., she "require[d] above average checking." [1] Avant then granted the promotion to Worley, a white, who was next on the list.

The district court found that the comparative qualifications of the candidates for a promotion were not at issue. Under Burlington's system, Monroe need not have been the most qualified candidate for promotion, but only the qualified candidate

with the most seniority. The district court found that Monroe established a *prima facie* case of race discrimination. It also determined that the reasons which Burlington advanced for denying the promotions, her low potentiality rating and her attendance record, were pretextual. The court found that the poor rating for promotion potential was based primarily on excessive absences from employment and that, although Monroe was absent a considerable number of days in each of the three years prior to her promotion applications, Burlington's records of employee absences were inadequate for a comparison of Monroe's record to those of other employees. The court found Burlington's evidence to be inconsistent on the factual issue of whether or not it considered, as serious, reprimands made more than one year prior to the date of a promotion decision. Based on these considerations, the district court held that the nondiscriminatory reasons advanced by Burlington were pretextual, and concluded that race, if not the sole factor, was a factor in denying Monroe the promotions.

 The trial court correctly employed the format for receiving and analyzing evidence in employment discrimination cases under Title VII. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Supreme Court in *McDonnell Douglas* and *Burdine* set forth the order and allocation of proof in a private, non-class action alleging employment discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. That decision provides the basis for conceptualizing the evidentiary burdens imposed on parties to Title VII actions. The plaintiff first must prove by the preponderance of the evidence a *prima facie* case of discrimination. If the plaintiff succeeds in proving a *prima facie* case, burden of production then shifts to the defend-

---

**1.** There is an unresolved dispute as to whether this employee withdrew from consideration prior to Avant's action on her application. It is,

however, a minor point and one we need not resolve.

ant to articulate legitimate, nondiscriminatory reasons for the failure to promote. *McDonnell Douglas,* 411 U.S. at 800–03, 93 S.Ct. at 1823–25; *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 (placing burden of production on defendant helps judge determine whether litigants have created an issue of fact in Title VII case; allocations of burdens and creation of presumption by the establishment of a *prima facie* case intended progressively to sharpen the inquiry into the elusive question of intentional discrimination). If the defendant carries its burden, the plaintiff then must show by a preponderance of the evidence that the reason offered by the defendant was a pretext for discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94; *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Cuthbertson v. Biggers Brothers, Inc.,* 702 F.2d 454, 458 (4th Cir.1983). While the *McDonnell Douglas/Burdine* test offers a means of conceptualizing the respective evidentiary burdens imposed in Title VII disparate treatment actions, the cases do not establish a rigid formula for analyzing those burdens. They also do not alter the basic burden of persuasion which the plaintiff bears in challenging an employment decision—persuading the court that the defendant has intentionally discriminated. *Burdine,* 450 U.S. at 253–56, 101 S.Ct. at 1093–95; *Cuthbertson,* 702 F.2d at 458; *Wright v. National Archives and Records Service,* 609 F.2d 702, 714 (4th Cir.1979)(en banc).

■ To establish her *prima facie* case, the first step in proving her Title VII claim, Monroe had to prove that: (1) she belonged to a racial minority; (2) she applied and was qualified for the positions for which Burlington was seeking applicants; (3) despite her qualifications, she was rejected; and, (4) after her rejection, the position remained open and Burlington continued to seek applicants. *Burdine,* 450 U.S. at 252–53 & n. 6, 101 S.Ct. at 1093–94 & n. 6 (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). In its bench opinion, the district court found that Monroe had proven a *prima facie* case of disparate treatment, thus creating a rebuttable presumption that the employer had unlawfully

discriminated. *Id.* at 254 & n. 7, 101 S.Ct. at 1094 & n. 7.

In response to Monroe's proof, Burlington asserted that it had not promoted Monroe because its personnel manager, Avant, after reviewing Monroe's personnel file, concluded that she was unqualified for the available positions. The district court rejected this reason as pretextual and, thus, ineffective to rebut the presumption created by Monroe's *prima facie* case.

We may reverse the district court's findings only if we determine that they were clearly erroneous. *Anderson v. Bessemer City,* —— U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Pullman Standard v. Swint,* 456 U.S. 273, 289, 102 S.Ct. 1781, 1790, 72 L.Ed.2d 66 (1982) (district court's finding of discriminatory intent a factual finding which may be overturned on appeal only if it is clearly erroneous). That standard allows us to reverse only when we are left with the definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1526 (4th Cir.1984).

■ Burlington does not challenge the district court's finding that Monroe proved a *prima facie* case, but focuses its attack instead on the court's finding that Burlington's proffered reasons for not promoting Monroe were pretextual. To decide the issues raised by this challenge, we must first analyze the way in which the parties attempted to meet their respective evidentiary burdens once Monroe had established her *prima facie* case. The burden of production on the defendant to articulate a legitimate nondiscriminatory reason does not require the employer to persuade the court by a preponderance of the evidence that it was motivated by the proffered reason. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *see Lovelace v. Sherwin-Williams Co.,* 681 F.2d at 230, 244 (4th Cir.1982) (evidence need only be legally admissible and not be intrinsically unworthy of acceptance, and the reason advanced be a legit-

imate one). It is sufficient that the defendant raises an issue of fact as to whether it discriminated against the plaintiff. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95. The plaintiff's evidence that sufficed to invoke the presumption, however, remains in the case, although unaided by the presumption, and the trier of fact may consider that evidence on the issue of whether the defendant's explanation is pretextual. *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. at 1094–95 & n. 10.

 After Burlington articulated a nondiscriminatory reason for not promoting Monroe, she bore the burden of demonstrating that the reason was pretextual. This burden, in effect, merged with Monroe's ultimate burden of persuasion as to Burlington's intention in not promoting her. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Lovelace,* 681 F.2d at 240. She could have met that burden directly by persuading the court that a discriminatory reason motivated Burlington or indirectly by showing that the proffered nondiscriminatory explanation was unworthy of credence. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Here, the district court found that Monroe had accomplished the latter. Our task now is to determine whether the district court was clearly erroneous in making that finding.

 Although the district court's factual findings are not as specific or as cogently organized as we would like, they are sufficient for appellate review.[2] We conclude that those findings are not clearly erroneous. We do not limit our inquiry into Burlington's motives for not promoting Monroe to the actions of its personnel manager Avant. Avant had been at the Altavista facility less than six months when Burlington failed to promote Monroe. Because he based his decisions exclusively on the applicants' personnel files, we must examine the manner in which the company developed those files. Otherwise, employers could avoid liability under Title VII by insulating the ultimate personnel decision maker from the discriminatory actions reflected in its files.

After considering all of the testimony and the exhibits, the district court concluded that Monroe's below average potentiality rating of "2" reflected in large part the assessment of her supervisor that her attendance had been unsatisfactory. That assessment had also been the basis of a disciplinary counseling session in 1981 which was noted in her personnel file. The district court found that Burlington had not established standards by which employee attendance could be judged satisfactory or unsatisfactory. Furthermore, employees had not been informed that even excused absences could adversely affect their promotional opportunities within the company. Monroe offered evidence that Worley and Brown had experienced at times higher absenteeism rates than Monroe. While we do not consider dispositive a comparison of their attendance records to Monroe's, we feel that the evidence offered relative to the attendance of all three women underscores the lack of standards regarding employee absences in the annual rating of employees. The district court found that the absence of such standards and procedures in an organization the size of Burlington undercut the proffer of Monroe's attendance as the basis for denying Monroe the promotions. The court also found internally contradictory Burlington's evidence with respect to the company's use of reprimands more than one year old. We also note that after Burlington initiated its new promotional system in September 1982, Monroe was permitted to sign up despite the company's evaluation of her attendance record as unsatisfactory. In view of Monroe's consistently satisfactory performance evaluations, the court further discounted the credibility of Burlington's

---

**2.** We traditionally do not construe Fed.R.Civ.P. 52 in a technical manner, but compliance by a district court with this rule for the purpose of insuring an adequate basis for appellate review is essential. This is particularly true in cases founded on diverse evidence susceptible to many inferences. Most Title VII cases, including this one, fit that category. *See,* e.g., *Cuthbertson,* 702 F.2d at 465 (remand for more detailed findings of fact and conclusions of law).

insistence that her record was a nondiscriminatory basis for the company's rejection of her promotion.

In sum, the district court found that Monroe had proven her *prima facie* case, and that Burlington's explanation of its actions in failing to promote Monroe was pretextual, in part due to the manner in which the company evaluated Monroe's attendance as a factor denying her promotion. Although the district court did not set forth its findings of fact in a particularly clear manner, its opinion is adequate for our appellate review. We cannot say that the district court was clearly erroneous in its holding, and we affirm its decision.

AFFIRMED.