991 F.2d 787
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ray Lorraine BEREZ, Plaintiff-Appellant,
v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellee.
 No. 92-2206.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 1, 1993
Decided: April 9, 1993
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert F. Murray, Senior District Judge. (CA-88-2443-HM)
 Argued: Paul R. Kramer, Baltimore, Maryland; Donald Douglas Hecht, Baltimore, Maryland, for Appellant. Burton John Fishman, Weinberg & Green, Baltimore, Maryland, for Appellee.
 On Brief: Leslie L. Gladstone, Baltimore, Maryland, for Appellant. J. Craig Peyton, Leonard H. Pazulski, Weinberg & Green, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before LUTTIG, Circuit Judge, MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Ray Lorraine Berez (Berez), a sixty-six year old female, brought suit against her employer, Prudential Insurance Company (Prudential), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., claiming she was passed over for promotions to management positions within Prudential because of sex and age discrimination. The district court granted summary judgment in favor of Prudential and Berez appealed. We affirm.
 
 I.
 
 2
 Berez worked for Prudential as a sales agent in California and Washington, D.C. from 1966 until 1988.[1] In Washington, Berez worked primarily out of her home and rarely visited her office during working hours except to attend quarterly staff meetings. Although she was never licensed to sell all of Prudential's products, Berez participated in various seminars and qualified for some sales awards.
 
 
 3
 In 1981, Berez made her desire to move into a managerial position known to her superiors. Between 1981 and 1987, Berez repeatedly informed officials at Prudential that she would like to be promoted. Although she did not specifically apply for the positions,[2] Berez contends that she was passed over for four jobs in management: (1) in October 1984, David West, a male under 40, was hired as a Development Manager; (2) in January 1985, Wilson Baker, a male under 40, was hired as a Development Manager; (3) in June 1987, Elizabeth Weese, a female under 40, was hired as a Training Manager; and (4) in March 1987, Thomas Read, a male under 40, was hired as a Human Resource Manager. According to Berez, she was told in 1986 that she would not be promoted to fill future vacancies in management because of her "lack of consistency and absence from agency training and participation in product knowledge."
 
 
 4
 During the time Berez alleges her requests for a promotion into management were being ignored (1984-1987), her renewal rate on previously written policies remained high. However, the volume of policy sales she had been producing decreased dramatically. In 1985, Berez sold five policies. This was the second lowest number of policies sold in Prudential's Washington office among full time sales agents. In 1986, she sold only four policies, the lowest number of sales by any full time employee in her office. In 1987, Berez's sales declined still further to a single policy which was again the lowest number of policies sold. On two separate occasions, in 1984 and 1987, Berez was informed that her sales production was below the minimum required by Prudential and that she was in jeopardy of losing her job.
 
 
 5
 On March 19, 1987, Berez filed charges with the Equal Employment Opportunity Commission (EEOC) against Prudential based on Prudential's decisions to fill the Development Manager, Training Manager, and Human Resource Manager positions with three men and a woman, all of whom were under 40 years old. Berez alleged that Prudential had discriminated against her on the basis of her sex and age in making its hiring decisions. The EEOC found no probable cause to believe the alleged discrimination occurred and issued a right to sue letter. Soon thereafter, Berez filed a complaint in district court against Prudential. The complaint, as subsequently amended, encompassed allegations of sex discrimination under Title VII, 42 U.S.C. § 2000e et seq. and age discrimination under ADEA, 29 U.S.C. § 621 et seq.
 
 
 6
 On March 16, 1992, Prudential filed a motion for summary judgment. The district court correctly ruled that Berez's claims pertaining to the two Development Manager positions were time barred because Berez had failed to file charges with the EEOC within 300 days of the appointments of David West and Wilson Baker in 1984 and 1985, respectively. See 42 U.S.C. § 2000e-5(e). In regards to the Training Manager and Human Resource Manager positions, Berez was found to have met her "modest burden" of stating a prima facie case for discrimination. In addition, the court concluded that Prudential had presented legitimate, nondiscriminatory reasons for failing to hire Berez. Prudential asserted that Berez was not hired because she had not applied for the positions, was not qualified for the positions, and because the applicants selected were more qualified than she. The district court held that Berez was unable to demonstrate that these explanations were a pretext for discrimination and granted summary judgment.
 
 
 7
 Berez appeals the grant of summary judgment as it applies to her claims involving the Training Manager and Human Resource Manager positions. She contends that disputed issues of material fact exist concerning whether she applied for these two positions and was a qualified applicant. These factual controversies, Berez argues, are sufficient to preclude the entry of summary judgment.
 
 II.
 
 8
 A motion for summary judgment will only be granted where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All facts and inferences must be construed in favor of the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Nevertheless, to successfully oppose a summary judgment motion by creating a genuine issue of material fact, the nonmoving party must proffer more than "a scintilla of evidence." Anderson, 477 U.S. at 252.
 
 
 9
 To prevail in a Title VII or ADEA action, the plaintiff must first present a prima facie case of discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). A prima facie case is established under Title VII and the ADEA where a plaintiff makes a showing that "(1) she belonged to a [protected class of persons]; (2) she applied and was qualified for the positions for which [her employer] was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position remained open and [her employer] continued to seek applicants." Monroe v. Burlington Indus., Inc., 784 F.2d 568, 571 (4th Cir. 1986) ( citing Burdine, 450 U.S. at 252-53 & n. 6). Presenting a prima facie case shifts the burden to the defendant to articulate legitimate, nondiscriminatory reasons for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-03 (1973); Ballinger v. North Carolina Agricultural Extension Service, 815 F.2d 1001, 1005 (4th Cir.), cert denied, 484 U.S. 897 (1987). If the defendant meets this burden of production, the plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reasons were a pretext for discrimination. Burdine, 450 U.S. at 253; Cuthbertson v. Bigger Brothers, Inc., 702 F.2d 454, 458 (4th Cir. 1983).
 
 
 10
 We assume, arguendo, that Berez was minimally qualified for the Training Manager and Human Resource Manager positions and, therefore, acknowledge that she has established a prima facie case. In response, Prudential has articulated legitimate reasons for not hiring Berez to fill one of these positions. This Court must determine if any genuine issue of material fact exists concerning whether Prudential's justifications for failing to hire Berez were a pretext for sex and age discrimination. Two of the reasons articulated for not hiring Berez were that (1) she had not applied for the two positions in question[3] and (2) the candidates selected possessed superior qualifications. Even when all the facts and inferences are construed in favor of Berez, both of these explanations are fully supported by the record. Because Berez has failed to create a genuine issue of fact regarding Prudential's justifications for its hiring decisions, summary judgment is appropriate.
 
 III.
 
 11
 Berez asserts that her expressions of general interest in being promoted into management, which she voiced on several occasions to her superiors, created a genuine issue of fact as to whether she specifically applied for the Training Manager and Human Resource Manager positions. We reject this contention. Although such general promotion requests may be sufficient to satisfy the application requirement necessary to establish a prima facie case, they fall well short of constituting a specific application for either position. Berez failed to present evidence that she applied for the Training Manager position, Human Resources Manager position or any management position at all. Further, she did not allege that the candidates selected for the jobs had any special notice of the vacancies or that Prudential prevented women or individuals over forty years old from applying. The record reveals that Berez never applied for the positions in question or inquired about gaining the skills necessary to perform these jobs, and no evidence suggests that Berez was prevented by Prudential from doing so. Thus, Prudential's assertion that Berez failed to apply for the two management positions remains unrefuted. As no genuine issue of material fact exists concerning Berez's failure to apply for the positions in question, summary judgment was properly granted.
 
 IV.
 
 12
 Prudential's assertion that the two individuals selected for the jobs in question were more qualified than Berez has not been refuted. This provides an alternative basis for affirming the grant of summary judgment.
 
 
 13
 The Training Manager position required working with a General Manager to prepare and implement classroom training programs to teach sales agents about Prudential's products and markets. It called for an individual with excellent communication and counseling skills and an interest in office activities.
 
 
 14
 Berez contends she was qualified for the Training Manager position because she participated in several seminars and in management training classes offered by Prudential, informally trained and recruited agents in California, had substantial sales experience, a high persistency rate on renewals, and cultivated an excellent portfolio of clients. In addition, she claims she did not purposely isolate herself from involvement in office activities. Instead, Berez alleges she was encouraged by Prudential to work at home. Assuming Berez was minimally qualified for the Training Manager position, the record supports Prudential's contention that the applicant selected for the job, Elizabeth Weese (Weese), had far superior credentials.
 
 
 15
 Weese had been an instructor at various colleges and universities where she taught communications, forensics, and medical procedure communication styles. She had a B.A. in Communications and a Master's Degree in Psychology. She had also become licensed to sell all of Prudential's products including equity products.
 
 
 16
 Although Berez attended seminars, conferences, classes at Prudential's management school and informally trained sales agents, she lacked any experience in developing a training program, counseling students, or formally educating individuals in a classroom environment. Furthermore, she was not licensed to sell equity based stock which was a prerequisite to providing instruction on the sale of equity or securities-related products.
 
 
 17
 Berez's claim that her substantial sales experience made her qualified for the Training Manager position is meritless. The record shows that her sales performance between 1985 and 1987 was extremely poor and twice led her to the brink of losing her job with Prudential. Berez's sales experience merely indicates that she was performing poorly in her sales position. It does nothing to bolster her contention that she was more qualified than Weese to train other sales agents.
 
 
 18
 Finally, the record establishes that Berez was rarely in the Washington office and was even less frequently involved in office activities. Despite her contention that Prudential encouraged her to work outside of the office, Berez's conduct demonstrates a complete lack of interest in office affairs. This is yet another indication that she was less qualified for the position than Weese, the candidate Prudential selected.
 
 
 19
 Berez failed to proffer evidence creating a genuine issue of material fact regarding the superiority of Weese's credentials. Therefore, the district court's grant of summary judgment must be affirmed as it pertains to claims involving the Training Manager position.
 
 V.
 
 20
 The Human Resource Manager was responsible for maintaining a continuous flow of quality recruits as sales agents. The job required a person with experience in recruiting and hiring employees. It was beneficial to Prudential to select a person who had access to a variety of sources from which to draw quality candidates for employment.
 
 
 21
 Berez alleges she was qualified for this job for the same reasons she claims to be qualified for the Training Manager position. Again, assuming Berez was minimally qualified for the position at issue, the candidate selected for the job had clearly superior qualifications. The Human Resource Manager position was filled by Thomas Read (Read) in March 1987. Read had a B.A. in Business Administration and had previously worked for NRI Group, Inc., which was a nationwide "head hunter" company. There he specialized in placing accounting and finance executives and developed significant contacts in the community which would assist him in recruiting for Prudential. Prior to working for NRI, Read had worked as a small business consultant and at an advertising design firm. In addition, before he was hired, he became licensed to sell all of Prudential's products.
 
 
 22
 Berez was unable to proffer evidence challenging the superiority of Read's credentials to her own. Berez did informally recruit some agents in California. However, she simply lacked the depth of experience, expertise, and knowledge of employee recruiting practices and markets which Read had gained while working for NRI. Because no genuine issue of material fact existed regarding the superiority of Read's credentials, summary judgment was properly granted against all of Berez's claims involving the Human Resources position.
 
 VI.
 
 23
 The reasons articulated by Prudential for not hiring Berez were legitimate and nondiscriminatory. Assuming, arguendo, that Berez was minimally qualified, Prudential's two remaining explanations for hiring persons other than Berez were not shown to be a pretext for discrimination. Berez failed to apply for the two positions in question and both applicants who were hired, Weese and Read, had superior qualifications. As no genuine issue of material fact existed concerning Prudential's reasons for choosing to hire the individuals it did, the district court had no option but to enter summary judgment. The district court's decision is accordingly
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 On January 27, 1988, Berez retired and became an emeritus agent
 
 
 [2]
 Berez asserts that she was not informed that the positions were available
 
 
 [3]
 It is undisputed that Berez did not apply specifically for either position. She maintains that she would have applied and gained whatever extra training or education was necessary to qualify for the jobs if she had been informed of an opening