Bruce BEAUDETT, Appellant,

v.

CITY OF HAMPTON; City Attorneys A. Paul Burton and W. Stephen Moore; Judge T.H. Wilson, II; and Judge Nelson T. Overton, Appellees.

No. 84–1009.

United States Court of Appeals, Fourth Circuit.

Argued July 15, 1985.

Decided Nov. 4, 1985.

Martha J. Tomich, Appellate Law Fellow, Washington, D.C. (Stephen A. Goldblatt; Nancy E. Hezlep; Steven L. Zelinger; Appellate Litigation Clinical Program, Georgetown University Law Center on brief), for appellant.

Thomas E. Glascock, Hampton, Va., Linwood Wells, Asst. Atty. Gen., Richmond, Va. (Glascock, Martin & Graves, Hampton, Va., Gerald L. Baliles, Atty. Gen., Robert B. Condon, Asst. Atty. Gen., Richmond, Va., on brief), for appellees.

Before RUSSELL, SPROUSE and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

This case requires the court to consider once again the difficult problems raised when *pro se* litigants only vaguely identify potential legal issues in the controversy at hand. Though these litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them. In this case, the district court addressed the only issue that this litigation gave it reason to consider, and we affirm the court's dismissal of this action. Other issues urged on appeal simply were not presented to the district court, and neither that court nor this court need reach them.

I

Bruce Beaudett brought this action under 42 U.S.C. § 1983 after a protracted dispute with the City of Hampton, Virginia. The controversy began on April 18, 1980 when Beaudett tripped over a six-inch high curb erected by the city and suffered a wrist injury resulting in $200 in medical expenses. After unsuccessfully seeking removal of the curb and reimbursement from the city, Beaudett took his grievance to state court.

Beaudett sought $5000 damages from the city in Virginia's General District Court.[1] After a bench trial, judgment was entered for the city. Beaudett noted his desire to appeal the decision so that he might receive a jury trial. He failed, however, to perfect his appeal as required by Virginia law,[2] so no appeal followed.

On December 1, 1980 Beaudett began, according to his complaint, a "benign vigil in [the] lobby of city hall, as [a] protest for being denied a jury and (to my mind) justice." Seven months into Beaudett's vigil, City Attorney Moore told Beaudett that he had been asked to draft a loitering ordinance, but would not have to do so if Beaudett left city hall. Beaudett did not leave, and the ordinance was passed.

Starting on September 1, 1981, and continuing over the next two years, Beaudett was convicted at least six times under either the loitering ordinance, Hampton Code § 24–17, or Virginia's criminal trespass statute, Va.Code § 18.2–119. On each occasion he was fined and subsequently sentenced to jail for refusing to pay his fines. He was last released from jail on August 26, 1983.

Beaudett instituted this § 1983 suit shortly thereafter. In addition to the city of Hampton, defendants in the suit include Judge T.H. Wilson, II of Hampton General District Court, who presided over Beaudett's personal injury claim, and Judge Nelson T. Overton of Hampton Circuit Court, who presided over Beaudett's criminal matters. Also named are two City Attorneys, A. Paul Burton and W. Stephen Moore.

---

1. Virginia Code § 16.1–77 provides that General District Courts have concurrent jurisdiction with Circuit Courts for claims greater than $1000 but not exceeding $7000. Though there is no right to trial by jury in General District Courts, litigants have a right to appeal to Circuit Courts in cases involving more than $50. Va. Code § 16.1–106. There a trial *de novo* by jury may be had. Va.Code § 16.1–113. Suits may also be brought initially in Circuit Court, where a jury trial is available from the outset. *See* Va.Code § 8.01–336.B.

2. Virginia requirements for perfection of appeals are found in Va.Code § 16.1–107.

The complaint is set forth on a printed form commonly used by state prisoners in § 1983 actions. After briefly setting out the facts stated above, it asserts that Beaudett is, as a citizen, "entitled to (1) a jury in my civil suit, (2) freedom of speech (sitting in city hall lobby), and (3) equal protection from persecution." In his request for relief, Beaudett wrote, "I wish to tell my story to a 12 person jury for my civil suit, and now to charge the city of Hampton, Virginia, the City Attorneys and the Judges of collusion and for obstructing justice."

The district court dismissed Beaudett's complaint for failure to state a cause of action.[3] Noting that "[t]he only relief sought by the plaintiff is a right to have a jury trial on his claim for a personal injury," the district court held no recovery could be had from the named defendants because each was immune from liability. It is true, however, that these defendants are not immune from every type of relief under all circumstances. *See e.g., Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984); *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 736, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980); *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is therefore necessary to determine precisely the nature of the complaint and the relief requested by Beaudett, before ruling upon the propriety of the dismissal.

## II

The district court perceived this lawsuit as essentially seeking a jury trial in Beaudett's civil action against the city. Before this court, Beaudett—now with the benefit of counsel—resurrects the jury trial claim by charging a conspiracy to violate his civil rights [4] and asserts a profusion of claims never considered below. Specifically, he charges that he was jailed because of his indigency, subjected to selective prosecution, and deprived of First Amendment rights by a vague and overbroad loitering ordinance. These claims, it is urged, were presented to the district court by the complaint and in subsequent proceedings but were not considered when the suit was dismissed. We hold, however, that the additional claims were never properly presented to the trial court, so there was no error in its failure to consider them.[5]

*Pro se* lawsuits present district judges and magistrates with a special dilemma. On the one hand, they represent the work of an untutored hand requiring special judicial solicitude. On the other, they may present obscure or extravagant claims defying the most concerted efforts to unravel them. In *Gordon v. Leeke,* 574 F.2d 1147, *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978), this circuit detailed steps district courts may usefully take to assist *pro se* litigants in the presentation of their grievances. *Gordon* expressed the

---

**3.** Beaudett asserts the district court should have treated the motions as requests for summary judgment because the court relied on information outside the pleadings. *See Plante v. Shivar,* 540 F.2d 1233 (4th Cir.1976). Though we agree that the district court's consideration of this case was in the nature of summary judgment, our disposition of this matter is unaffected by the characterization of the district court's action. *Plante* simply requires that all parties be given notice that summary judgment is being considered and the opportunity to present all pertinent material to the court in hopes of raising a genuine issue of material fact. These requirements were met here because the court was, in fact, considering summary judgment motions along with the motions to dismiss. The distinction between dismissal for failure to state a claim and summary judgment is necessarily

blurred where, as here, the complaint does not identify clearly the issues that concern the litigant and the judge must consider more than the complaint itself simply to discern what the lawsuit is all about.

**4.** Appellant's brief alleges a general "conspiracy to violate his civil rights." Because the statements asserting a "collusion" among defendants all concern the denial of a trial by jury, we treat the conspiracy claim as an extension of Beaudett's underlying complaint that he was denied a trial by jury.

**5.** We note that appointment of counsel in *pro se* cases is a matter for the discretion of the district court. *Wimmer v. Cook,* 774 F.2d 68, 76 (4th Cir., 1985). No claim is made on appeal that this discretion was abused.

indisputable desire that those litigants with meritorious claims should not be tripped up in court on technical niceties. 574 F.2d at 1151.

■ Principles requiring generous construction of *pro se* complaints are not, however, without limits. *Gordon* directs district courts to construe *pro se* complaints liberally. It does not require those courts to conjure up questions never squarely presented to them. District judges are not mind readers. Even in the case of *pro se* litigants, they cannot be expected to construct full blown claims from sentence fragments, which is essentially what Beaudett is seeking here.

■ Nor should appellate courts permit those same fleeting references to preserve questions on appeal. In the light of hindsight, of course, and with the benefit of counsel on appeal, issues may be brought before this court that were never fairly presented below. We will not, however, require the district courts to anticipate all arguments that clever counsel may present in some appellate future. To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a *pro se* plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party. *See Gordon,* 574 F.2d at 1151.

■ We instead examine the district court's action in light of what was, in fact, before it. Subsequent proceedings, may, at times, reveal that ambiguous fragments in the complaint represent the heart of a litigant's concern. In such a case, a district court should give a *pro se* litigant the benefit of a liberally construed complaint, in the spirit embodied in Fed.R.Civ.P. 8(f) and 15. Where the context, as here, makes clear a litigant's essential grievance, the complainant's additional invocation of general legal principles need not detour the district court from resolving that which the litigant himself has shown to be his real concern.

## III

These principles guide our review of the court's disposition of Beaudett's action. We find that the district court's perspective on this lawsuit was compelled by the course of proceedings before it.

■ The entire dispute arose out of Beaudett's personal injury, and he began his vigil in city hall to protest the lack of a jury in his lawsuit. The only relief sought by the complaint is a jury trial in the personal injury action. Though the complaint mentions a desire to charge the defendants with "collusion," Beaudett's own deposition reveals that the deprivation allegedly resulting from this collusion was in fact his underlying concern—the lack of a jury trial. *See* note 4, *supra.*

At the end of his deposition, Beaudett was given the opportunity to expand upon his comments. He merely reiterated that "I ... choose to present my case before a jury of my peers on the soonest date possible." When asked what he wanted that jury to decide, Beaudett recounted his fall over the concrete barrier, his desire to charge the city with gross negligence, and his hope that "perhaps the jury will tell them what to do." No other relief was requested or anticipated.

His argument on motions before the district court confirms that Beaudett focused squarely and exclusively on receiving a jury trial in his personal injury action: "I still request my jury, to tell them the story that I have told you, with perhaps more elaboration. And my request is standing. It is my right; I claim it. . . . I deny their request for dismissal and request to tell my story before a jury of my peers and let them tell their story, and whatever they say, let it be done." The thrust of the grievance is apparent. "All I want to do," Beaudett told the district court, "is to tell my story to a jury." In his final plea to the court, Beaudett's desire is no less clear: "So as Paul in the Bible would go before Caesar, in this land a Caesar is a jury of

twelve of my peers. The city can pick theirs, we will agree on twelve, and I will tell my story and the city will tell theirs, please, as soon as possible."

We recognize that Beaudett's complaint and the record developed below make passing reference to other facts and principles now relied upon by Beaudett in urging reversal. From the complaint's reference to Beaudett's vigil and right to freedom of speech, Beaudett would have us find that a vagueness and overbreadth challenge to the Hampton loitering ordinance was properly presented to the district court. A claim of selective prosecution is now said to be lurking in the bald assertion that Beaudett was entitled to "equal protection from persecution" and from the statement of City Attorney Moore to Beaudett. Finally, Beaudett's complaint is said to contain an allegation that he was jailed solely because of his indigency when it recounts that he was jailed for his refusal to pay fines.

We do not expect or require the district court to develop and resolve these serious charges from such scant assertions. Beaudett had every opportunity to draw the attention of the court to those grievances that he wanted it to hear. As established above, however, it is clear that he was seeking, in essence, a jury trial in his personal injury suit. Whatever other legal disputes Beaudett may have had were not brought before the court by the invocation of legal principles at a level of generality so high as to be obscure, especially in light of Beaudett's overwhelming emphasis on his desire for a trial by jury. In this context, we see no error in the district court's sense of what this lawsuit was about.

## IV

Having determined that Beaudett complained only of the denial of a trial by jury and asserted a collusion by defendants to deny him one, we find that dismissal of the suit was proper. We do not rest on immunity grounds, as did the district court, but simply find no substantive violation of Beaudett's right to a jury trial.

We have no trouble concluding that Beaudett's own actions deprived him of a trial by jury. Had he originally brought his personal injury claim in Circuit Court, as he was entitled to by Va.Code § 17–123, he would have received a jury upon request. *See* Va.Code § 8.01–336.B. Beaudett also could have received a *de novo* jury trial by properly perfecting his appeal from General District Court. Va.Code § 16.1–113. His failure to receive a jury trial, therefore, is the result of his own failure to follow valid state procedures rather than the result of any collusion by defendants in violation of 42 U.S.C. § 1983.

For the reasons stated above, the judgment of the district court dismissing Beaudett's complaint is hereby affirmed. Because Beaudett did not present his First and Fourteenth Amendment contentions in this lawsuit, we express no opinion on the merits of those claims.