867 F.2d 608
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Charles W. JOHNSON, Plaintiff-Appellant,
v.
PENNSYLVANIA WIRE AND ROPE COMPANY, INC., Defendant-Appellee.
 No. 88-1118.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Nov. 23, 1988.
Decided: Jan. 13, 1989.
Rehearing and Rehearing En Banc Denied March 1, 1989.
 
 Charles W. Johnson, appellant pro se.
 Lacy Isaac Rice, Jr. (Rice, Douglas & Shingleton), for appellee.
 PER CURIAM:
 
 
 1
 Charles Johnson appeals from the dismissal of his Title VII discrimination suit against Pennsylvania Wire Rope Corporation (PWRC). We hold that, on the facts presented, summary judgment was proper and affirm.
 
 
 2
 * In 1984, Johnson filed this private-sector lawsuit against PWRC, alleging that he was wrongfully discharged because he was black. In support of his claim,[1] Johnson stated that PWRC discharged him for excessive absenteeism but that this reason was a pretext for racial discrimination. Specifically, Johnson stated that seven of his absences[2] were not a valid "occurrence" under company policy because (1) he had a medical excuse for one five-day absence; (2) one absence was counted beyond a 12-month period; and (3) one absence should not be counted because he worked one month without any absences. Johnson also complained that PWRC had not given him any advance warning of his discharge, in violation of established policy.[3] Finally, Johnson also alleged that he could show that white employees, also absent excessively, received differential (and more favorable) treatment from PWRC, if allowed to examine company records.
 
 
 3
 PWRC first filed a jurisdictional challenge to the lawsuit, but their motion was denied based on a factual finding by the district court. Then, PWRC filed a general denial. Throughout the time this case was in pre-trial status, PWRC did nothing to challenge Johnson's allegations.
 
 
 4
 In March 1988,[4] the district court attempted to schedule Johnson's claim for Settlement Week, but the parties indicated that would be futile. At that time the case was set for a pre-trial conference on May 23 and trial was set for May 24.
 
 
 5
 At the pre-trial conference the district court attempted to get Johnson to proffer his evidence. Johnson was vague in response and the district court indicated that if Johnson would not take a voluntary dismissal, it would dismiss the case as frivolous and impose sanctions. Johnson refused to dismiss the case and the district court entered summary judgment for PWRC sua sponte.
 
 
 6
 The district court based its conclusion on the record and the following facts it deemed conceded by Johnson:
 
 
 7
 1. The published rules of the defendant company call for the discharge of an employee that has ten unexcused absences in a twelve-month period.
 
 
 8
 2. Five white employees have been discharged because of that policy.
 
 
 9
 3. [Johnson] has ten unexcused absences within a year period, was put on probation, had two more unexcused absences during the probationary period and was thereupon discharged.
 
 
 10
 4. The percentage of black individuals in the employ of the defendant company was and is substantially larger than the percentage of black individuals living in the county in which the defendant plant is located.
 
 
 11
 The district court also noted Johnson's only response to the above facts--a statement, without any factual support, that the white employees were discharged in a different manner than he.
 
 II
 
 12
 It is evident that this case comes to us in an atypical posture. Thus, before we address the merits of the order below, some preliminary observations are in order. First, we view the record below as poorly developed. We attribute this problem to (1) Johnson's pro se pleadings, which "present obscure or extravagant claims denying the most concerted efforts to unravel them." Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir.1985); and (2) PWRC did nothing, other than file a jurisdictional challenge, to clarify and challenge Johnson's claims for the four years this case was on the trial docket.
 
 
 13
 Second, we consider summary judgment to be a proper tool to be used in Title VII cases, despite the fact that these cases often turn on determinations better made at trial. See Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir.1985). While we recognize that PWRC's intent is at issue, we do not think that mere incantations of PWRC's improper motive insulate Johnson from summary judgment. Id. at 365. See also Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment rule would be rendered sterile if mere incantation of intent would operate as a talisman to defeat the motion).
 
 
 14
 Third, we conclude that the district court properly acted sua sponte in ordering summary judgment. We acknowledge that Fed.R.Civ.P. 56 requires a motion by one, or both, of the parties, prior notice of the motion hearing, and the hearing, itself. However, this Court has approved sua sponte orders of summary judgment where the purposes of Rule 56--notice and an opportunity to be heard--are achieved. See e.g., Beaudett v. City of Hampton, supra; Fender v. General Electric Co., 380 F.2d 150 (4th Cir.1967). See also Rose v. Town of Harwich, 778 F.2d 77, 82-83 (1st Cir.1985); Harrington v. Vandalia-Butler Board of Education, 649 F.2d 434, 436 (6th Cir.1981). We recognize that some of the circuits take a different view, see Clark v. Tarrant County, Texas, 798 F.2d 736 (5th Cir.1986); Griffin v. Wainwright, 772 F.2d 822 (11th Cir.1985); Brobst v. Columbus Services International, 761 F.2d 148 (3d Cir.1985), but we think a better view is that a district court can, in rare cases, act on its motion in this regard.
 
 
 15
 Moreover, we think the district court acted properly in this case. We note that the district court acted at the pre-trial conference, the day before trial was scheduled. We assume that, after four years of delay, Johnson had developed his case and evidence sufficiently to withstand scrutiny. Furthermore, we note that Johnson had over two months notice of the pre-trial conference and its importance. Therefore, we perceive no inequity or impropriety in requiring Johnson to articulate, or proffer, his evidence at this stage. Thus, we view his inability to do so as more a product of the (lack of) viability of his claim rather than a result of the process used.
 
 III
 
 16
 In evaluating the merits of the decision below, we are guided by familiar principles. Johnson's basic burden is to establish intentional discrimination. Monroe v. Burlington Industries, Inc., 784 F.2d 568, 571 (4th Cir.1986). He may meet his burden through the production of direct evidence (i.e., statements of the defendant) or circumstantial evidence. Moore v. City of Charlotte, N.C., 754 F.2d 1100, 1105 (4th Cir.1985). The order of proof and the allocation of burdens is well established:
 
 
 17
 First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reasons for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 
 
 18
 Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). In a disciplinary case, such as Johnson's, a prima facie case is established by showing
 
 
 19
 (1) that plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin; and
 
 
 20
 (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person.
 
 
 21
 Moore, 754 F.2d at 1105-06.
 
 
 22
 We hold that Johnson cannot establish element one of the Moore burden. The defect in Johnson's case is that he has failed to allege that there were other people who, like himself, were absent from work while on probationary status. Without this similar baseline there is no meaningful way to compare the treatment accorded Johnson with the other white employees.
 
 
 23
 Furthermore, we hold that even if Johnson's (confusing) allegations could be construed to establish a prima facie case, Johnson does not establish that his discharge for excessive absenteeism was pretextual.[5] The only facts Johnson offers to support his claim concern speculation regarding the procedures employed to notify white employees similarly situated. However, Johnson does not offer any fact that even suggests a racially based animus for his discharge. In light of the undisputed fact that five white employees were discharged for excessive absenteeism, we conclude that Johnson can only offer a "mere incantation of intent" and cannot meet his burden in the third stage as defined by Burdine.
 
 
 24
 Therefore, we find that Johnson did not establish the necessary elements of his cause of action. He has not proved a prima facie case nor has he shown that PWRC's plausible reason for discharge was pretextual. Under these circumstances, we think the district court acted properly.
 
 
 25
 We dispense with oral argument because the facts and legal contentions are adequately presented in the record before this Court and oral argument would not aid the decisional process.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Because Johnson proceeded pro se, the development of his claim was marked by a number of lengthy, confusing documents. Thus, the factual support for his claim had to be gleaned from these documents and is presented in summary form
 
 
 [2]
 Under PWRC policy, an employee was placed on probation after 10 absences. After his tenth absence, Johnson was put on 90-day probation and during that probationary period was absent two additional days
 
 
 [3]
 Johnson places great emphasis on this alleged breach of policy as evidence of racial animus by PWRC
 
 
 [4]
 There is no explanation in the record for the four-year delay in the processing of this case
 
 
 [5]
 While PWRC never raised this reason for the discharge in its pleadings, it is clear on the record before us that that is PWRC policy and that Johnson and the district court assumed that was the reason for the discharge. Thus, an issue of fact has been established, which is sufficient under Burdine to trigger Johnson's burden to establish the reason is pretextual. Monroe, 784 F.2d at 571