**Theodore Henry BLUE, Plaintiff,**

v.

**Mr. J.M. JABE, Chief Warden, et. al., Defendants.**

**No. Civ.A. 3:96CV47.**

United States District Court, E.D. Virginia, Richmond Division.

Dec. 23, 1996.

and will not prejudice the Defendants' right to present further evidence on the issue at trial on the merits.

Theodore Henry Blue, pro se.

William M. Muse, Office of Atty. Gen. of Va., Richmond, VA, for Defendants.

## MEMORANDUM OPINION

PAYNE, District Judge.

Plaintiff, Theodore Henry Blue, Jr. ("Blue"), proceeding *pro se* and *in forma pauperis,* brings this action under 42 U.S.C.

§ 1983. He alleges that defendants J.M. Jabe ("Jabe"), W.S. Lawhon ("Lawhon"), and D. Trent ("Trent") violated his First Amendment rights by verbally persecuting him for his religious belief and by denying him the possession of a gold leaf medallion. He seeks injunctive relief and compensatory damages in the amount of $200,000 .00. The defendants have filed a motion for summary judgment and Blue has responded and filed his own motion for summary judgment. Jurisdiction is appropriate under 28 U.S.C. §§ 1343(a)(3).

### Standard for Summary Judgment

Summary judgment is appropriate where there is no "genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must make all reasonable inferences in favor of Blue, the non-moving party, viewing the evidence in the light most favorable to him. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Furthermore, the Court must credit the factual allegations that favor Blue, the party resisting summary judgment, and draw inferences favorable to him if the inferences are reasonable—however improbable they may seem. *Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir.1980); *see Scott v. Greenville County*, 716 F.2d 1409, 1411 (4th Cir.1983). When responding to a motion for summary judgment, a party may not rest upon mere allegations or denials of the adverse party's pleading. The party's sworn or certified response, or affidavits, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). If Blue establishes that there is a genuine material issue for trial, summary judgment is inappropriate.

### Summary of Facts

Blue is currently an inmate at Greensville Correctional Center ("Greensville"). Jabe is the Chief Warden of Greensville. Lawhon is the Assistant Warden. Trent is a Captain of the guards at the facility. When Blue arrived at Greensville on September 15, 1995, he possessed a small gold medallion shaped like a leaf, approximately one inch in size. Ordinarily, inmates are not permitted to possess non-religious gold medallions. Blue claimed that his was a religious medallion and requested that he be allowed to retain it. Blue was ordered to remove the medallion and turn it over to prison officials, pending an inquiry into whether the medallion, had an actual religious purpose.

Blue claims that on November 28, 1995, he informed Trent that his religion was Hebrew Israelite.[1] Blue wrote to Jabe on four occasions to rectify the problem. He received the same response to each letter: "given request forms to security for action and disposition." In his October 27, 1995 letter to Jabe, Blue stated that he "follows the religion or belief of Yahweh Ben Yahweh which states that the worship of anything other than a human is positive."

Trent made inquiries to determine whether the medallion was associated with the Hebrew Islamic religion. A priest in the Catholic Diocese of Richmond indicated that he did not know of any religion which used a leaf medallion and several Muslims stated that a leaf was not a religious emblem. Unable to verify that the medallion was associated with any religion, Jabe and Trent advised Blue that he would not be allowed to retain the gold leaf. Trent stated that "if Blue is able to provide him with evidence that the leaf medallion is associated with a religion, he will reconsider the decision and allow him to retain it."

On the above facts, Blue makes the following claims:[2]

---

1. Jabe, Lawhon, and Trent assert, in their affidavits, that they made efforts to determine whether the leaf medallion was associated with the Yaweh ben Yaweh Faith. Jabe, Lawhon, and Trent also explain that this Faith is associated with the Hebrew Islamic religion and that is the reason why defendant Trent talked to several Muslims. Blue, however, has asserted that the Yaweh ben Yaweh Faith is connected with the Hebrew Isra-

elite religion, not the Hebrew Islamic religion. *See Arvin-Thornton v. Philip Morris Products, Inc.*, 64 F.3d 655 (1995); *Lawson v. Singletary*, 85 F.3d 502 (11th Cir.1996) (Yaweh ben Yaweh Faith connected to Hebrew Israelite religion).

2. Blue failed to raise any Equal Protection claims in the body of his complaint regarding his treatment as compared to other religious sects

1) that Jabe, Lawhon, and Trent violated his First Amendment right when they refused to allow him to retain his gold leaf medallion; and

2) that Jabe violated his First Amendment right by verbally persecuting him for his religious belief.

■ Blue's second claim, is premised solely on his assertion of verbal abuse by correctional officers. Verbal abuse alone does not state a claim under 42 U.S.C. § 1983. *Moody v. Grove,* 885 F.2d 865 (4th Cir.1989); *Solomon v. Dixon.* 724 F.Supp. 1193 (1989) Claim 2 will be DISMISSED.

### Immunity for Official Capacity

■■ Blue has sued Jabe, Lawhon, and Trent in their official and individual capacities for damages and injunctive relief. "An official-capacity suit against a public official is really a suit against the governmental entity that employs the official." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Thus, Blue has in effect sued the State of Virginia. "The Eleventh Amendment to the Constitution bars suits against the State and its employees in their official capacity for money damages unless waived by the State or Congress." *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 97–103, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Neither the State of Virginia nor Congress has waived Virginia's immunity. Therefore, Blue cannot sue Jabe, Lawhon, and Trent in their official capacities for civil damages.

### Freedom of Religion

■ A prisoner seeking to make a claim under § 1983 must show that he was deprived of a right guaranteed by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. In this case, the constitutional right at issue is the plaintiff's right to practice his religion. There is a natural tension between the freedom to practice religion by a person who is incarcerated and the legitimate administrative and security concerns of the prison system. *See Woods v. Evatt,* 876 F.Supp. 756, 772 (D.S.C.1995), *aff'd,* 68 F.3d 463 (4th Cir.1995). Nevertheless, prisoners must be provided reasonable opportunity to exercise their religious freedom guaranteed under the First Amendment. *Hudson v. Palmer,* 468 U.S. 517, 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). However, to merit protection under the Free Exercise Clause of the First Amendment, a religious claim must satisfy two basic criteria. First, the plaintiff's proffered belief must be sincerely held. Second, the claim must be rooted in religious belief. *Wisconsin v. Yoder,* 406 U.S. 205, 215–16, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Thomas v. Review Bd. of Indiana Employment Security Div.,* 450 U.S. 707, 713–14, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). Under the second prong, plaintiff must make a threshold showing that his religious freedom or expression was substantially burdened by the actions of defendants. *See Woods v. Evatt,* 876 F.Supp. 756, 772 (D.S.C.1995), *aff'd,* 68 F.3d 463 (4th Cir.1995). The burden placed on the religious exercise "must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief which is central to religious doctrine." *Graham v. C.I.R.,* 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub nom., Hernandez v. Commissioner,* 490 U.S. 680, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989).

### Discussion

■ Where a movant for summary judgment can show a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts become immaterial because there can be no genuine issue of material fact. *See* Fed.R.Civ.P. 56(c). In this case, Blue has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). While Blue has shown that he has a sincerely held religious belief in the Yaweh

within the prison. While Blue does allude to discriminatory treatment within the body of the Memorandum, the Court is not required to conjure up questions never squarely presented to them in construing pro se complaints. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir.1985).

ben Yaweh branch of the Hebrew Israelite religion, Blue has not shown that his need for the gold leaf medallion is a central tenant of the Yaweh ben Yaweh faith.

Jabe, Lawhon, and Trent questioned several religious sects regarding whether a leaf medallion was used in any religion. They were told that a leaf was not used in any religion and that it was not a religious emblem. Blue merely asserted, in a letter dated October 27, 1995, that the leaf, like an "emblem of a cloud or a flag" is symbolic of his religion because it is "closer to the creator than humans because we (humans) have weakness." This falls far short of the burden on Blue. He must show the Court or prison officials that his need for the leaf medallion is a central tenant of the Yaweh ben Yaweh faith. *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir.1987), *aff'd sub nom., Hernandez v. Commissioner*, 490 U.S. 680, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). Blue has presented no evidence that the leaf medallion is necessary to the practice of his religion.[3]

 Additionally, the Court finds that in the event the claims against Jabe, Lawhon, and Trent are not dismissed, they are entitled to qualified immunity in the claim against them for civil damages. "Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818–819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

At the time of the alleged violation, the clearly established law relating to the Free Exercise Clause in the prison permitted prison regulations to impinge on an inmate's constitutional rights if the regulation was reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). The prison regulation at issue in this case permits inmates to retain certain personal property items if they are acquired in an appropriate manner and are authorized for possession. The prison regulation includes religious items which must be authorized in the same manner as other personal property items. If they are not authorized, the prisoner is not permitted to retain them. Trent attempted to verify whether Blue's medallion was associated with a religion, but was unsuccessful. Based on his inability to verify that the medallion was associated with a religion, Trent, acting as a reasonable officer, refused to authorize possession in accordance with the prison regulation. Because the actions of Jabe, Lawhon, and Trent reasonably could have been thought consistent with any rights Blue might have had, they are entitled to qualified immunity.

Accordingly, Jabe, Lawhon, and Trent's motion for summary judgment is GRANTED. Blue's motion for summary judgment is DENIED. Blue's claim against Jabe, Lawhon, and Trent for injunctive relief is DISMISSED.

It is so ORDERED.

---

**3.** The Court notes that Trent stated if Blue is able to provide him with evidence that the leaf medallion is associated with a religion, prison officials will allow Blue to retain the gold leaf medallion.