**Charles William LEVY, Plaintiff,**

v.

**Jean R. JENSEN, Defendant.**

No. CIV. 03–763–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 29, 2003.

Charles William Levy, pro se.

James W. Hopper, Senior Assistant Attorney General, Richmond, VA, for Defendant.

### MEMORANDUM OPINION

CACHERIS, District Judge.

This matter arises out of a candidate's desire to be listed on more than two bal-

lots in an upcoming state election. The question presented is whether Virginia may constitutionally restrict candidates from having their name printed on the ballot for more than two offices at any one election. The Court holds that the Commonwealth may impose such restrictions in accordance with the First and Fourteenth Amendments of the United States Constitution.

## I. Background

Plaintiff Charles William Levy ("Levy") is a Virginia resident and perennial candidate for public office. A self-described "seasoned veteran" of Virginia politics, (Thompson Aff. Ex. A), he has run numerous times for elective office in the Commonwealth of Virginia since 1994. During that period, Levy has received over 51,000 votes in local, state, and federal elections.

Levy registered with the State Board of Elections as a candidate in six different upcoming elections. He sought to have his name printed on the ballot for the November 4, 2003 general election as an independent candidate for the Senate of Virginia, the House of Delegates of Virginia, chairman of the Fairfax County Board of Supervisors, at-large member of the Fairfax County School Board, and the Mason District member of the Fairfax County School Board. Apparently, Levy has complied with the requirements to have his name listed on the ballots for all of the offices.

Sections 24.2–504 and 24.2–525 of the Virginia Code prohibit a candidate from appearing on the ballot for more than two offices in any one election. By letter on June 4, 2003, Lorraine M. Thompson, the Manager of the Election Services Division of the State Board of Elections, notified Levy that, pursuant to Virginia Code Section 24.2–504, his name could not appear

on the general election ballot for more than two offices. On June 6, 2003, Levy responded, in writing, stating that he wished to have his name "appear on the November 4, 2003 ballot for chairman of Fairfax Board of Supervisors and for Senate of Virginia 35th District." (Thompson Aff. Ex. A.)

On June 11th, Levy filed this suit alleging that the Defendant, Secretary of the State Board of Elections Jean R. Jensen, abridged his rights, under the First and Fourteenth Amendments, by preventing him from appearing on the ballot for more than two offices in one election. The Complaint asks for $10 billion in compensatory and punitive damages. The parties agree that Levy will appear on the general election ballot for chairman of the Fairfax County Board of Supervisors and for the Senate of Virginia from the 35th Senatorial District. (Def. Resp. at 3.)

Subsequent to filing his applications to appear on the ballot, Levy's "rent-gouging landlord, Lerner Corporation" evicted the candidate from his apartment complex. He obtained another "Section Eight" apartment, which is located in the 38th and not the 35th district. If elected, it is unclear whether Levy would be able to serve as the Senator from the 35th District given his residence outside the district. On August 1, the Defendant moved for summary judgment in this case.[1] On August 5th, Levy moved for a 30–Day Injunction. These motions are now before the Court.

## II. Virginia's Statutory Scheme [2]

All candidates for public office, excluding Presidential and Vice Presidential candidates, *see* Va.Code Ann. § 24.2–543, must file declarations of candidacy and nominating petitions signed by one-half of one percent of registered Virginia voters

---

1. Defendant notified the Plaintiff in compliance with and pursuant to Local Rule 7(J) and *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975).

2. *See* Va.Code Ann. § 24.2–100 *et seq.*

by at least 150 days before the general election, *see* Va.Code Ann. §§ 24.2–506, 507(1). A candidate for the Virginia Senate must secure 250 signatures on his candidacy petition. *See* Va.Code Ann. § 24.2–506. Candidates need only secure 125 signatures on their petition for the House of Delegates and for membership on the governing body or elected school board of Fairfax County. *Id.* Pursuant to the provisions of Va.Code Ann. §§ 24.2–504 and 24.2–5525, "[n]o person shall have his name printed on the ballot for more than two offices at any one election." Furthermore, Section 2.2–2807 of the Virginia Code prohibits a person from holding more than one elected office at the same time.

### III. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Evans v. Technologies Applications & Serv., Co.,* 80 F.3d 954, 958–59 (4th Cir.1996) (citations omitted). In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs.,* 933 F.2d 1253, 1259 (4th Cir.1991) (citations omitted).

The very existence of a scintilla of evidence or of unsubstantiated conclusory allegations, however, is insufficient to avoid summary judgment. *Anderson,* 477 U.S. at 248–52, 106 S.Ct. 2505. Rather, the Court must determine whether the record as a whole could lead a reasonable trier of fact to find for the non-movant. *Id.* at 248, 106 S.Ct. 2505. If a motion for summary judgment is "properly supported by affidavits, depositions, or answers to interrogatories, the nonmoving party may not rest on mere allegations or denial of the pleadings ... [but] must respond by affidavits or otherwise and present specific facts demonstrating a triable genuine issue of material fact." *Garrett v. Gilmore,* 926 F.Supp. 554, 555 (W.D.Va.1996).

When *pro se* litigants are involved in a matter, courts are presented with a "special dilemma." *Beaudett v. City of Hampton,* 775 F.2d 1274, 1277 (4th Cir.1985). In particular, *pro se* claims often present courts with "obscure or extravagant claims defying the most concerted efforts to unravel them." *Id.* Nevertheless, the Fourth Circuit has recognized an "indisputable desire that those litigants with meritorious claims should not be tripped up in court on technical niceties." *Id.* at 1277–78 (citing *Gordon v. Leeke,* 574 F.2d 1147 (4th Cir. 1978)). Despite, the Fourth Circuit's general observation that *pro se* complaints should be read liberally, it has also stated that there is an outer limit to liberal construction that "does not require those courts to conjure up questions never squarely presented to them." *Id.* at 1278.

### IV. Analysis

There are no genuine issues of material fact at issue in this case. Levy has filed declarations and petitions of candidacy to appear on the ballot as a candidate for more than two offices, and the Commonwealth refuses to list Levy on the ballot as a candidate for more than two offices. The sole issue before the Court is whether Sections 24.2–504 and 24.2–525, which limit a candidate's name from appearing on the ballot for more than two offices, are constitutionally permissible restraints on the voters' rights to associate or to choose among candidates. This is a pure question of constitutional law, and therefore, is appropriate for summary judgment.

■ Virginia's "two-office" limitation, Sections 24.2–504 and 24.2–525, is a re-

striction on a candidate's access to the ballot. The impact of candidate eligibility requirements on voters implicates basic constitutional rights. *Anderson v. Celebrezze*, 460 U.S. 780, 787, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). States may, however, impose restrictions upon a candidate's eligibility for the ballot. *Id.* at 788, 103 S.Ct. 1564. Reasonable, nondiscriminatory restrictions that serve important regulatory interests should be upheld. *Wood v. Quinn*, 104 F.Supp.2d 611, 613 (E.D.Va.2000) (quoting *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992)). The Supreme Court has recognized that, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974).

## A. Level of Scrutiny

As Levy has alleged violations of the First and Fourteenth Amendments, the Court must first determine the applicable level of scrutiny. The Plaintiff argues that strict scrutiny should apply, and the Defendant contends that rational basis review is appropriate.

■ Generally, legislatures are presumed to have acted constitutionally, and legislative distinctions between classes of individuals will be struck down only if they bear no rational relationship to a legitimate state end. *Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) ("Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them"). However, courts will apply strict scrutiny when "the challenged statute places burdens upon 'suspect classes' of persons or on a constitutional right that is deemed to be 'funda-

mental.'" *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Specifically in the ballot access context, "requirements constituting an unreasonable, discriminatory burden are the only requirements subject to strict scrutiny review." *Wood v. Meadows*, 207 F.3d 708, 716 (4th Cir.2000).

The Supreme Court in *Clements* held that the right of a candidate to appear on a ballot is not fundamental. 457 U.S. at 963, 102 S.Ct. 2836. Although voters have fundamental rights, "not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or choose among candidates." *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564. Therefore, the Court must find that the challenged restrictions burden a suspect class, if it is to apply strict scrutiny. The Supreme Court has acknowledged that a heightened level of scrutiny may apply in cases involving ballot restrictions that impact certain classifications. *Clements*, 457 U.S. at 964–65, 102 S.Ct. 2836. Although economic status is not a suspect classification, *see San Antonio Indep. Sch. Dist.*, 411 U.S. at 18, 93 S.Ct. 1278, the Supreme Court, in *Clements*, noted that it had departed from rational basis review where a restriction "falls with unequal weight on voters, as well as, candidates, according to their economic status" or where restrictions disproportionately burden small political parties, in an attempt to maintain the "status quo." *Clements*, 457 U.S. at 964–65, 102 S.Ct. 2836. The Constitution does not prevent states from subjecting independent candidates to "reasonable burdens, similar in degree, to those imposed on party candidates." *Wood*, 207 F.3d at 712 (citing *American Party of Texas v. White*, 415 U.S. 767, 787–88, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974)).

In this case, the Court liberally construes Levy as arguing that the "two-of-

fice" limitation "falls with unequal weight" upon impoverished and independent candidates. Plaintiff claims that "using multiple races" is a method "to offset his poverty." (Pltf. Resp. at 2.)

■ After consideration, rational basis scrutiny is appropriate in this case. The Court does not dispute that Levy is both in poverty and an independent candidate. However, it is unclear how the "two-office" limitation unequally burdens poor or independent candidates. All candidates for office are limited to appearing on the ballot for two elected offices. One could argue that wealthy candidates, who might be able to maintain multiple campaigns, would be the greatest beneficiaries of the repeal of the ballot restriction. Sections 24.2–504 and 24.2–525 neither target poor candidates nor discriminate against those unaffiliated with a major political party. Accordingly, the Court will not apply strict scrutiny, because the "two-office" restriction neither implicates a "fundamental" right, nor impacts a "suspect class."

## B. Application of the *Anderson* Test

■ When reviewing a state's election laws, the Supreme Court, in *Anderson*, rejected any "litmus paper test," holding that courts must apply a balancing test. *Anderson*, 460 U.S. at 789, 103 S.Ct. 1564. A court must "first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments the plaintiff seeks to vindicate then it must identify and evaluate the precise interest put forward by the State as justifications for the burden imposed by its rule." *Id.* In resolving the issue, the Court must "not only determine the legitimacy and strength of each of those interests: it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.*

### 1. The Injury to Levy's First and Fourteenth Amendment Rights

States may not protect "the status quo" by making it "virtually impossible" for independent candidates to appear on the ballot. *Clements*, 457 U.S. at 965, 102 S.Ct. 2836. Ballot restriction cases usually involve statutory obstacles that independent candidates have difficulty overcoming, because of their limited resources. The Fourth Circuit has stated that the "two most critical burdens on independent candidacies" are the "sheer length of time between the filing date and general election ... and simultaneous filing deadlines for independent and primary candidates." *Cromer v. South Carolina*, 917 F.2d 819, 826 n. 4 (4th Cir.1990). In *Cromer*, the court of appeals found that requiring independent candidates to file a declaration of candidacy 200 days before the general election was a "practically total" burden upon their rights. *Id.* at 824. The law forced independent candidates to make a "draconian decision at a time when a rational basis for making it does not exist." *Id.* at 823; *but see Wood*, 207 F.3d at 711–17 (holding that a Virginia law requiring independent candidates to file declarations of candidacy and petitions by the second Tuesday in June, which is 150 days before the general election, did not unreasonably burden an independent candidate's rights).

■ The Court considers the injury or burden to Levy's First and Fourteenth Amendment rights to be slight. Levy has not articulated any reason why appearing on multiple ballots furthers his First or Fourteenth Amendment rights. The Court assumes that he believes it will increase his chances of being elected.[3] How-

---

**3.** Levy states that the House of Delegates, by its passage of this ballot restriction, is seeking to "protect their right to prevent such an upstart as Levy from ever again using multi-

ever, the Commonwealth is not required to "handicap an unpopular candidate" so as to maximize the likelihood that he or she will gain access to the ballot. *See Munro v. Socialist Workers Party, et al.*, 479 U.S. 189, 198, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986). Candidates do not have an absolute right to run in every election in which they choose to participate. For example, states may require that minor-party or independent candidates to show a "modicum of support among the potential voters for office." *Id.* at 194, 107 S.Ct. 533.

All other ballot restriction cases involve independent candidates attempting to appear on the ballot for a single office. Levy has overcome the usual burdens imposed on independent candidates that are scrutinized by courts. The only "draconian decision" that Levy confronted was which offices to run for. On June 6th, he chose to run for the positions of "chairman of Fairfax Board of Supervisors and for Senate of Virginia 35th District." (Thompson Aff. Ex. A.) Unlike the candidate in *Cromer*, on June 6th, Levy had a rational basis to make that decision. He possessed sufficient information to assess his chances of winning each of the elections. For example, he knew that some of the offices are elected by the voters from the entire county, while others, like the Senate seat, are elected only by the voters from particular districts. At the time he chose to run in the 35th district, Levy knew of the risk that he could be evicted and fail the residency requirement. The selection of two offices is a mere tactical decision, which only became relevant because of his particular circumstances—the eviction from his apartment the 35th district—and is not sufficient to create a serious burden. The

ple races for office as the means to offset his poverty to gain public acclaim and attention." (Pltf. Resp. at 2.) Sections 24.2–504 and 24.2–525 were amended to include the "two-office" limitation in 2000. *See* 2000 Va. Acts ch. 513,

statutes do not prohibit Levy from running for office, but merely require him to focus his efforts on two races. This Court finds the burden to Levy's First and Fourteenth Amendment rights to be reasonable, nondiscriminatory, and relatively minimal.

### 2. The Commonwealth's Justifications for the "Two–Office" Limitation

■ The second part of the analysis under *Anderson* is the identification and evaluation of the precise interest put forward by the Commonwealth as justifications for the burden imposed by its law. *Anderson*, 460 U.S. at 789, 103 S.Ct. 1564. The level of scrutiny a court applies differs depending on the nature of the burden imposed. *Wood*, 207 F.3d at 714. If the burden is severe, then the Court will scrutinize the state's justifications to ensure that the requirements are "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434, 112 S.Ct. 2059. However, when the statute imposes only "reasonable, nondiscriminatory restrictions," as is the case here, the state's "important regulatory interests are generally sufficient." *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564.

The Commonwealth articulates the following justifications for the ballot measure: (1) limiting the size of the ballot; (2) protecting the integrity of the election process; (3) avoiding voter confusion; and (4) preventing actual or apparent conflicts of interest that may arise with dual office holding. (Def.'s Mem. at 7–10.) The Court will discuss each in turn.

With regards to the first justification for the ballot restriction, the Supreme Court has held that states have a legitimate in-

522. However, even assuming that the House of Delegates specifically targeted Levy as part of the problem that they sought to remedy, it does not necessarily follow that the passage of the statute fails rational basis review.

terest in limiting the size of the ballot. *See Lubin v. Panish,* 415 U.S. 709, 715, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974) ("[T]he State's interest in keeping its ballots within manageable, understandable limits is of the highest order."). Limited ballots encourage voter participation and further the democratic process. *See id.* ("[T]hat 'laundry list' ballots discourage voter participation and confuse and frustrate those who do participate is too obvious to call for extended discussion."). Allowing candidates to run for more than two offices at a time would certainly increase the size of the ballot. Limiting the size of the ballot is an important interest furthered by the "two-office" limitation.

 Protecting the integrity of the electoral process is the second justification advanced by the Commonwealth. States have an "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot...." *Anderson,* 460 U.S. at 780, 103 S.Ct. 1564. Regulating the filing of "frivolous candidates" is a legitimate method to prevent "fragmentation of voter choice." *See Lubin,* 415 U.S. at 715, 94 S.Ct. 1315. In *Lubin,* the Supreme Court stated:

A procedure inviting or permitting every citizen to present himself to the voters on the ballot without some means of measuring the seriousness of the candidate's desire and motivation would make rational voter choices more difficult because of the size of the ballot and hence

would tend to impede the electoral process.

*Id.* Winnowing out candidates to "narrow the field" is a legitimate goal of state legislation. *See Storer v. Brown,* 415 U.S. 724, 735, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) (upholding the use of a primary to limit names on the general election ballot); *Lubin,* 415 U.S. at 715, 94 S.Ct. 1315 ("Rational results within the framework of our system are not likely to be reached if the ballot for a single office must list a dozen or more aspirants who are relatively unknown or have no prospects of success.").[4]

 States may impose nondiscriminatory requirements to limit the ballot to serious candidates. How a state chooses to impose limitations is left to the legislature. The Court must consider a state's ballot access scheme in its entirety when determining the constitutionality of a particular provision. *See Wood,* 207 F.3d at 711. Virginia has chosen to impose a rather modest requirement on the number of signatures that a candidate must receive to appear on the ballot. *Compare* Va.Code Ann. §§ 24.2–506 (requiring 1/2 of 1 percent of registered voters), *with Jenness v. Fortson,* 403 U.S. 431, 438, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971) (upholding statute requiring independent candidates to file petitions signed by 5% of the number of voters eligible to vote in the election).[5] In *Wood,* the Fourth Circuit noted that it was unable to find a case in which any court had held that a statutory scheme like Vir-

---

4. Levy acknowledged at oral argument that he had little chance of winning any of the offices.

5. The Fourth Circuit has described the Virginia Ballot scheme as "indulgent." *Libertarian Party of Virginia v. Davis,* 766 F.2d 865, 869 (4th Cir.1985) (upholding a signature requirement of 0.5% of all eligible Virginia Voters). The Supreme Court has upheld more onerous restrictions than the "two-office"

limitation. *See, e.g., American Party,* 415 U.S. at 767, 94 S.Ct. 1296 (upholding a state law that prevented voters from signing more than one petition, and from voting in a party primary after signing an independent candidate's petition); *Socialist Party v. Hechler,* 890 F.2d 1303 (4th Cir.1989) (upholding scheme that barred voters from both signing an independent candidate's petition and voting in a party primary).

ginia's was unreasonably burdensome." 207 F.3d at 713.

Having set the threshold requirement for candidacy low, Virginia has chosen other means, like the "two-office" limitation, to restrict the number of candidates in a given election. The "two-office" limitation is rationally related to "measuring the seriousness of the candidate's desire and motivation" for seeking public office. Moreover, the Commonwealth need not demonstrate that it has chosen "narrowly tailored" means or the "least restrictive" means. *See Wood*, 207 F.3d at 716. The state must simply demonstrate that the means chosen are rationally related to achieving the legitimate end. Therefore, this Court cannot say that lowering the signature prerequisite and then imposing other demands on candidates is not rationally related to limiting the number of candidates in an election. Indeed, Levy is a direct beneficiary of the low threshold requirement. The Court finds that protecting the integrity of the electoral process is a legitimate justification for the "two-office" limitation.

The third justification for the "two-office" limitation is to avoid voter confusion. States are neither required to "make a particularized showing of voter confusion," *Munro*, 479 U.S. at 194, 107 S.Ct. 533, nor forced to wait until the political system "sustain[s] some level" of damage, *id.* at 195, 107 S.Ct. 533. Legislatures may be proactive and "respond to potential deficiencies in the electoral process with foresight rather than retroactivity." *Id.* at 195, 107 S.Ct. 533. In this case, the Court cannot say that the presence of one candidate running for multiple offices could not create voter confusion. It is sufficient that the Commonwealth has chosen to enact a non-discriminatory regulation to reduce voter confusion. This Court will not evaluate the efficacy of the ballot restriction or speculate whether there may be superior

methods. *See Nguyen v. I.N.S.*, 533 U.S. 53, 77, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001) ("The fact that other means are better suited to the achievement of governmental ends therefore is of no moment under rational basis review."). It is enough to note that the end is legitimate and the means are rationally related to that end. The Plaintiff has not carried his burden to overcome the presumption that the restriction is constitutional.

The avoidance of actual or apparent conflicts of interest that may arise with dual office holding is the final justification advanced by the Commonwealth. Section 2.2–2807 of the Virginia Code states, "[n]o person shall hold more than one elected office at the same time." Clearly, limiting candidates to holding one office is rationally related to the legitimate governmental end of having dedicated, focused, and conflict free state officers. Moreover, restricting candidates to running only on two ballots is rationally related to avoiding the possibility that one candidate will attempt to hold multiple offices. Again, this Court will not inquire into the existence of other means to achieve this goal. *Id.* The Court finds that avoiding the possibility of a candidate holding two offices is a legitimate end. The ballot restriction is rationally related to achieving that end.

In conclusion, the Court finds that this case presents no genuine issue of material fact. The Court holds that Virginia's ballot restriction limiting all candidates to appearing on the ballots for not more than two offices, Va.Code Ann. §§ 24.2–504, 24.2–525, is constitutional, because the State's regulatory interest outweighs Levy's interest in appearing on more than two ballots. The Court also considers that Levy's rights are only minimally burdened and that this minor burden is necessary for the proper functioning of Virginia's elections. *See Anderson*, 460 U.S. at 789,

103 S.Ct. 1564. Therefore, the Defendant is entitled to judgment as a matter of law under Fed.R.Civ.P. 56.

### V. Plaintiff Motion for Injunction

Since the Defendant is entitled to summary judgment, the Court does not need to reach the merits of Levy's motion for an injunction. The Court will deny the Plaintiff's motion.

### VI. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted and Plaintiff's motion for an injunction will be denied. An appropriate Order shall issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that:

(1) Defendants' Motion for Summary Judgment is GRANTED;

(2) Plaintiff's Motion for a 30–Day Injunction is DENIED;

(3) should Plaintiff wish to appeal, he shall file his notice of appeal within thirty (30) days of the date of entry of this Order; and

(4) the Clerk of the Court shall forward copies of this Order to all counsel of record and Plaintiff *pro se.*