**Karam L. ELRIES,**

v.

**DENNY'S, INC., et al.**

**No. Civ. DKC–00–363.**

United States District Court,
D. Maryland.

Jan. 10, 2002.

Afshin Pishevar, Law Office, Rockville, MD, for Plaintiff.

Sidney G. Leech, Goodell DeVries Leech and Gray, Baltimore, MD, for Defendants.

### MEMORANDUM OPINION

CHASANOW, District Judge.

Plaintiff Karam L. Elries (Elries) brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the common law, seeking damages for discrimination on the basis of race, religion, and national origin, retaliatory discharge, abusive discharge, intentional infliction of emotional distress, civil conspiracy, and negligent hiring, supervision, selection, and retention. Defendant's motion for summary judgment is pending and ready for resolution. No hearing is deemed necessary. Local Rule 105.6. For the reasons set forth below, Defendant's motion for summary judgment will be denied.[1]

### 1. *Background.*

The following facts are either undisputed or are construed in the light most favorable to Plaintiff.

Defendant Denny's, Inc. (Denny's), hired Plaintiff Elries in September 1997 as a server. He held this position until his termination on August 20, 1998. Elries, born in Palestine and descended from Arabic roots, claims that Defendant's discriminatory acts began with the interview process and culminated in his termination.

Elries alleges that he received different treatment than non-Arab employees at Denny's. He claims he was made to wait two to three hours for his interview, and once hired, made to wait two weeks before beginning employment. Def.'s Mot. Summ.J. at Ex. 1, Elries Depo. at 57–59 [hereinafter Elries Depo.]. He claims that non-Arabs were given preference over Arabs in choosing their work stations. Elries Depo. at 91; Pl.'s Opp'n at Ex. 2, ¶ 6; Ex. 3, ¶ 13. Management switched Elries' station on request from an American server who thought she could make more money in Elries' station. Elries Depo. at 91–94. American servers routinely received their side orders ahead of Arab servers, regardless of who presented their order first. *Id.* at 124–28. Arab servers were ordered to take breaks when their stations were busy so that the manager

---

1. Plaintiff has withdrawn Counts III, IV, V, and VI, which allege abusive discharge, intentional infliction of emotional distress, civil conspiracy, and negligent hiring, supervision, selection, and retention, and they will be dismissed. Pl's Opp'n at 23.

could collect the tips at those stations, even though policy prohibited managers from collecting tips. *Id.* at 130–34. When another employee cursed at Elries, she received no discipline. Management warned Elries that if he complained again about the cursing he would be written up. He also warned Elries that had Elries done the cursing, he would have been fired the same day. *Id.* at 42–48.

Elries claims that discriminatory treatment permeated all of his work activities and created a hostile environment. He asserts that Americans worked normal hours while his work schedule was arbitrarily changed and the hours diminished without explanation. *Id.* at 60–66. He also claims that his requests for schedule changes, including to be off on Muslim holidays, were always denied whereas schedule requests by non-Arab employees were generally granted. Pl.'s Opp'n at Ex. 2, ¶ 8. Elries also details experiences where either his completed work was usurped by others as their own or he would be ordered to do tasks assigned to another employee. He alleges that this did not happen to American employees. Elries Depo. at 67–74, 97–99, 116–18; Pl.'s Opp'n at Ex. 3, ¶ 11. When white American servers left without cleaning their stations, management directed Elries to clean the stations. Pl.'s Opp'n at Ex. 3, ¶ 11. Additionally, during break times, Elries and other Arabs were allegedly ordered to sit in the back of the room near the trash away from non-Arab employees. Elries Depo. at 94–96. Management also told Elries and other Arabs not to speak Arabic among themselves at the restaurant. *Id.* at 104–05. Affidavits of two former fellow employees support Elries' claims regarding taking breaks by the trash, denying schedule changes, requiring Elries to do work assigned to others, and forbidding speaking Arabic. Pl.'s Opp'n at Ex. 2, ¶¶ 5, 6, 8, 11; Ex. 3, ¶¶ 4, 11, 12.

Elries offers anecdotes where managers or other employees screamed, threatened, and even humiliated him. Elries Depo. at 42–48, 72–77, 84–86, 112, 144–45; Pl.'s Opp'n at Ex. 2, ¶ 9, Ex. 3, ¶ 9. A coworker made racial slurs to Elries and cursed him when he asked her to clean her tables at the end of her shift because he was taking over her work station. Elries Depo. at 84–85. Affidavits from other employees support Elries' contentions that management joked about his Arab culture and called him derogatory names. Pl.'s Opp'n at Ex. 2, ¶ 7; Ex. 3, ¶ 9. An affidavit also supports the claim that management issued a written reprimand to Elries when other employees cursed and acted rudely toward Elries. *Id.* at Ex. 2, ¶ 14. One affiant stated that management told him they intended to "get rid of all the Arabs." *Id.* at Ex. 3, ¶ 5; Elries Depo. at 112.

Management terminated Elries on August 20, 1998, for insubordination and failure to attend a customer. Pl.'s Opp'n at Ex. 1, ¶ 14; Elries Depo. at 142. Elries claims the manager was taking tables from him in order to receive the tips. He claims he was not too busy, did not require help, and asked her to stop interfering. Pl.'s Opp'n at Ex. 1, ¶ 14. He claims she then changed his work station without telling him, but she told the white employees about the new stations. Elries Depo. at 135. The manager seated a customer in the new section and did not tell Elries. *Id.* at 135–36. The customer waited for fifteen minutes and became upset. A confrontation between Elries and the manager ensued, and Elries was terminated. *Id.* at 137–40.

Records submitted by Defendant show numerous occasions where Plaintiff received a written reprimand from management regarding his behavior. Elries concedes that he received these reprimands,

but contends that they were pretextual. He cites nine incidents of these allegedly pretextual reprimands, claiming they are linked to the discriminatory actions of various management personnel. Pl.'s Opp'n at 17–19. It is the alleged string of harassing work activities, coupled with the allegedly pretextual reprimands, that bring Elries to court with claims of harassment and disparate treatment on the basis of race and national origin, and retaliatory discharge.

## 2. *Summary Judgment Standard.*

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990). A genuine dispute exists if a reasonable factfinder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. Only disputes over facts that might affect the outcome of the case under governing law will preclude summary judgment. *Id.* at 252, 106 S.Ct. 2505; *Thompson Everett, Inc. v. National Cable Advertising*, 57 F.3d 1317, 1323 (4th Cir.1995).

The moving party bears the initial burden of demonstrating that there is no genuine issue as to any material fact. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979). The moving party may meet this burden by demonstrating the absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party then must, through affidavits or other kinds of evidentiary material listed in Rule 56(c), demonstrate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. The non-

moving party cannot rely on "the mere pleadings themselves," or simply set forth speculation, allegations, or denials to demonstrate genuine issues of fact. *Id.*

The court must not weigh the evidence. Rather, the court must determine whether enough evidence exists to enable a reasonable factfinder to find in favor of the non-moving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. The court must view all facts and inferences most favorably to the non-moving party, who is entitled to have the credibility of his evidence assumed, his version of events in dispute accepted, and internal conflicts resolved in his favor. *Charbonnages de France*, 597 F.2d at 414. However, the non-moving party is only entitled to inferences that "fall within the range of reasonable probability." *Thompson Everett*, 57 F.3d at 1323.

## 3. *Discussion.*

### A. *Hostile Work Environment/Harassment*

■■■ A plaintiff asserting a race or national origin harassment claim under Title VII must show discrimination so severe or pervasive as to create an abusive work environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22–3, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Hartsell v. Duplex Prods. Inc.*, 123 F.3d 766, 772 (4th Cir. 1997) (citations omitted); *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1130 (4th Cir.1995) (citations omitted). The conduct must meet an objective standard; it must be sufficiently severe or pervasive that a reasonable person would find it hostile or abusive. *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367; *Conner v. Schrader–Bridgeport Int'l, Inc.*, 227 F.3d 179, 192 (4th Cir.2000). Whether harassment is sufficiently severe or pervasive to create an abusive work environment is "quintessentially a question of fact." *Beardsley v. Webb*, 30 F.3d 524, 530 (4th Cir.1994).

Defendant argues that Plaintiff's allegations have no connection to his race or ethnicity and therefore fail to rise to the level of severe or pervasive. Def.'s Mot. Summ.J. at 5–8. However, Elries offers at least eleven incidents in which he was treated differently than other employees who were not members of his protected class. *See* Elries Depo. at 48, 60, 67–71, 91–94, 94–96, 97, 112, 117–18, 124–28, 130–34, 134–36. The affidavits cite additional incidents of discriminatory treatment. *See* Pl.'s Opp'n at Ex. 2, ¶ 8; Ex. 3, ¶ 11. Plainly, many of the Plaintiff's allegations connect to his race or ethnicity. Moreover, while he was working, he complained about and alleged discriminatory treatment based on his race or ethnic characteristics. *See* Elries Depo. at 86, 168.

Defendant also argues that Plaintiff's allegations involve isolated incidents. However, Elries' total allegations, at least twenty-three in just eleven months, together with the supporting affidavits, allege a continuous pattern of racially motivated actions that could hardly be called isolated incidents. Citing *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984), for the proposition that affidavits cannot create a genuine dispute of material fact where they contradict Plaintiff's own deposition testimony, Reply to Pl.'s Opp'n at 8, Defendant claims that the witnesses' affidavits contradict Elries' testimony because the "Plaintiff's deposition testimony was clear that these were isolated events...." *Id.* However, Plaintiff's deposition testimony is not at all clear that these incidents were isolated, and it has not been shown to be in conflict with the affidavits in any material respect. In fact, the affidavits support Elries' claims and allegations. *Barwick* has no application here.

Defendant's third argument, that Elries' claims are unrelated to the work environment, is similarly unpersuasive.

Defendant argues that taking work breaks in a segregated area does not interfere with the employee's work and therefore does not constitute harassment. Plaintiff's allegations must establish an "objectively hostile or abusive work environment;" the focus is on the environment, not the work, and "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris*, 510 U.S. at 21, 23, 114 S.Ct. 367; *see also Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001) (stating "We are, after all, concerned with the 'environment' of workplace hostility...."). Undoubtedly, being relegated to the trash area for break times, receiving a constantly changing work schedule, and witnessing preferential treatment to American born employees in work assignments, cleaning responsibilities, holiday requests, and discipline matters are all factors to be weighed and considered by a factfinder to determine the severity or pervasiveness of the hostility in the work environment. The Defendant's motion for summary judgment on harassment/hostile work environment is thus denied.

### B. Disparate Treatment/Discriminatory Discharge

A plaintiff asserting national origin or race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2 *et seq.*, must demonstrate that his employer acted with discriminatory intent in taking an adverse action against him. Discriminatory intent can be shown by direct evidence or by circumstantial evidence using the three-step burden shifting scheme enumerated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Absent direct evidence, the plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *Karpel v. Inova Health Sys. Serv.*, 134 F.3d 1222, 1227–28 (4th Cir. 1998). In order to establish a *prima facie* case of discrimination because of his race and/or national origin, plaintiff must show that 1) he is a member of a protected class; 2) he performed his job satisfactorily; 3) he suffered from adverse employment action; and 4) similarly situated employees who were not minorities received more favorable treatment. *Hudson v. Joseph B. Fay Co.*, 902 F.Supp. 85, 88 (D.Md.1995). Once the plaintiff has established a *prima facie* case, the burden of production shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Reeves v. Sanderson Plumbing Prod. Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Once the defendant offers a legitimate nondiscriminatory reason, the plaintiff may present evidence suggesting that the employer's proffered reason was false, thereby causing the inference that the employer unlawfully discriminated. *Id.*

■ Elries has presented direct evidence of discriminatory intent. An affidavit by Delwin Cosia states that a manager told him, in reference to Elries, that she intended to "get rid of all the Arabs." Pl.'s Opp'n at Ex. 3, ¶ 5. Although the date of this alleged statement is not provided, Elries survived at Denny's less than a year. His termination, by definition, could not have been long after this statement was made. These two events, in close temporal proximity, are direct evidence of the Defendant's discriminatory intent.

Aside from the direct evidence, the Plaintiff arguably proves intent through the *McDonnell Douglas* proof scheme. At step one, Elries is Arab born and a member of a protected class. At step two, he offers evidence of his satisfactory job performance. An affidavit of a coworker attests that Elries provided prompt service and received no customer complaints. Pl.'s Opp'n at Ex. 3, ¶ 8. A regular customer submitted an affidavit saying that Elries "was a very nice and hard working server." *Id.* at Ex. 4, ¶¶ 2–3.[2]

■ Defendant cites a number of discipline notices, or "write ups," and alleges that Elries did not perform satisfactorily. Elries, however, contends that these "write ups" were a pretext for Defendant's discriminatory intent. For example, when another employee cursed at Elries and he complained to management, Elries also received a reprimand. Pl.'s Opp'n at Ex. 1, ¶ 13; Ex. 2, ¶ 10. Additionally, a manager approached Elries and yelled at him while he was attending to a customer. The customer filed a complaint, and the manager eventually issued a written letter of apology to Elries. She also wrote Elries up for the same incident, alleging he argued with her. Elries Depo. at 72–77. Looking at the evidence in the light most favorable to Plaintiff, a factfinder could conclude that his discipline notices were a pretext for discrimination rather than an indication of unsatisfactory job performance.

---

**2.** Plaintiff argues that Defendant admitted there were no complaints with Elries' performance, and thus cannot now argue that he did not perform satisfactorily. Pl's Opp'n at 9. This argument is unpersuasive. The testimony that Plaintiff offers to support this claim comes from someone who lacked personal knowledge of the Elries case and could not testify as to his performance. No where does Defendant suggest that Elries performed satisfactorily.

At step three, Elries suffered from an adverse employment action when Defendant terminated him on August 20, 1998. Elries Depo. at 135–40. In order to qualify as adverse, an employer's action must "adversely affect[ ] 'the terms, conditions, or benefits' of the plaintiff's employment." *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir.2001) (quoting *Munday, v. Waste Mgmt., Inc.*, 126 F.3d 239, 243 (4th Cir.1997)). Obviously, termination adversely affects the terms, conditions, or benefits of employment, and Plaintiff satisfies the third prong of the test.[3]

Elries has also made sufficient allegations to establish the fourth prong, that similarly situated non-minority employees received more favorable treatment. For instance, he claims that non-Arabs were given preference over Arabs in choosing their work stations. Elries Depo. at 91. When another employee cursed Elries, she received no discipline, yet Elries was warned that had he done the cursing, he would have been fired the same day. *Id.* at 42–48. Elries has established a *prima facie* case of discrimination.

Once Elries establishes a *prima facie* case of discriminatory discharge based on race and/or national origin, the Defendant must put forth legitimate non-discriminatory reasons for firing Elries. Defendant need only produce enough evidence to show a legitimate reason and does not have to persuade the court by a preponderance of the evidence. *Monroe v. Burlington Industries, Inc.*, 784 F.2d 568, 571 (4th Cir.1986). Defendant relies here on Plaintiff's disciplinary record, which suffices to show a legitimate reason for discharge.

Because the Defendant has articulated a legitimate, nondiscriminatory reason for firing Elries, Plaintiff then must show that the Defendant's stated reason is pretextual. *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097. Plaintiff contends, as noted, that these reprimands were biased and pretextual. Plaintiff need not put forth new evidence to defeat the Defendant's legitimate reasons, but may rely on the arguments cited above at step two in the *McDonnell Douglas* proof scheme. *Reeves*, 530 U.S. at 149, 120 S.Ct. 2097; *Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir.2000). Thus, Elries has presented enough evidence to raise a question of fact as to whether Defendant's reasons are pretextual. The Defendant's motion for summary judgment on disparate treatment and discriminatory discharge are thus denied.

### C. Retaliatory Discharge

In order to establish a prima facie claim of retaliation in violation of Title VII, a plaintiff must show that "1) the employee engaged in protected activity; 2) the employer took adverse action against the employee; and 3) a causal connection existed between the protected activity and the adverse action." *Munday v. Waste Mgmt. Inc.*, 126 F.3d 239, 242 (4th Cir.1997) (quoting *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985)). The employer may rebut the *prima facie* case by showing that there was a legitimate non-discriminatory reason for the adverse action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Munday*, 126 F.3d at 242 (citation omitted). The plaintiff must then show that those reasons are pretextual. *Id.* (citation omitted).

---

**3.** Elries also claims that manager Weston took tips from his tables. Elries Depo. at 130–33. If proven, this would also constitute an adverse employment action as it affects compensation. *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir.2001).

Generally, closeness in time establishes a causal connection and makes a *prima facie* case of causality. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989); *see also Haulbrook v. Michelin*, 252 F.3d 696, 706 (4th Cir.2001) (noting "a contested issue of fact arguably exists as to the causal connection between his accommodation request and termination, due solely to the proximity in time of his termination on November 25 and his assertion on November 4 of a right to accommodation under the ADA."). When another employee verbally abused Elries on August 12, 1998, he complained to management. Elries was then disciplined for the altercation. He claims that he told management, "[A]ll of you guys trying to disrespect me for what I see, disrespect and discrimination here." Elries Depo. at 168. Additionally, management reported the racial insults of the employee to the Office of Civil Rights Monitoring, as required by Defendant's policy. Def.'s Mot.Summ.J. at Ex. 2, "Employee Incident" dated 8/12/98 at 3. Defendant terminated Elries on August 20, 1998. This establishes the *prima facie* causality.

Defendant argues that closeness in time is not applicable here because Elries made many complaints of discrimination for many months prior to his termination. "[C]ases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality ... uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir.2001)); *Richmond v. ONEOK Inc.*, 120 F.3d 205, 209 (10th Cir.1997) (3–month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir.

1992) (4–month period insufficient). Defendant argues that six months elapsed between the plaintiff's first apparent accusation of discrimination, Elries Depo. at 122, and the firing. In such a case, the plaintiff's burden becomes "proximity plus": a plaintiff shows retaliatory conduct that began shortly after filing a complaint, thus showing *prima facie* causation, even though actual termination came much later. *Marx v. Schnuck Markets*, 76 F.3d 324, 329 (10th Cir.1996), *cert. denied*, 518 U.S. 1019, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996). *Cf. Causey v. Balog*, 162 F.3d 795, 803 (4th Cir.1998) (other evidence required to establish causation if interval between charge and termination too long (citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997))). Elries can establish "proximity plus" through the throng of written reprimands that began shortly after his initial complaints of discrimination. As noted, a genuine issue of material fact exists as to the legitimacy of these disciplinary actions. The retaliatory nature of the reprimands, if found, coupled with the relative temporal proximity, establishes a *prima facie* case of retaliation.

Defendant has the opportunity to rebut this *prima facie* case by showing that legitimate, non-discriminatory reasons exist for the termination. However, Defendant relies solely on the reprimands whose pretextual nature is a material dispute of fact. Thus, Defendant cannot win summary judgment on Plaintiff's claim of retaliatory discharge.

### D. Abusive Discharge and Common Law Claims

Defendant moved for dismissal of Plaintiff's abusive discharge and common law claims, Counts III, IV, V, and VI. Plaintiff's Opposition strikes Counts III, IV, V,

and VI. Plaintiff's claims on these counts are thus dismissed.

### 4. *Conclusion.*

Plaintiff shows genuine issues of material fact on his Title VII claims. Accordingly, the Defendant's motion for summary judgment is denied as to the Title VII claims of harassment, disparate treatment, and retaliatory discharge. Counts III, IV, V, and VI of Plaintiff's complaint will be dismissed.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this _____ day of January, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. Counts III, IV, V, and VI of the complaint BE, and the same hereby ARE, DISMISSED;

2. The motion of Defendant Denny's Inc. for summary judgment as to the Title VII claims BE, and the same hereby IS, DENIED;

3. A telephone scheduling conference will be held on **Tuesday, February 5, 2002, at 9:00 a.m.** Counsel for Plaintiff is requested to arrange for and initiate the call to counsel for Defendant and the court; and

4. The clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties.